Donna D. WILSON, Judy Hurt, and Brian Davis, Plaintiffs–Appellees,

v.

Roger MORGAN, Adrian Barnes, Andy Walker, Robert howard, Timlaycock, Robert Manges, Jim Wright, and John Wilson, Defendants–Appellants.

No. 01–6388.

United States Court of Appeals, Sixth Circuit.

Dec. 17, 2002.

Before SILER and DAUGHTREY, Circuit Judges; and ALDRICH, District Judge.*

SILER, Circuit Judge.

In this interlocutory appeal, Defendant police officers appeal the district court's denial of qualified immunity regarding false arrest claims and unreasonable search claims. For the reasons stated below, we AFFIRM the denial of qualified immunity for all officers except Walker, but we REVERSE and REMAND in Walker's case.

## I.

On August 8, 1998, Defendant Andy Walker was dispatched to investigate a disturbance at Richard Emert's residence in Knoxville. Tennessee. When Walker arrived he found Emert's son, Mike Blizzard. Blizzard reported that a "Judy Wilson" had fired a gun in the house, and that she had left the scene with two people (one male, one female) in a red Jeep, leaving behind a bag of weapons and ammunition taken from inside the house. Blizzard told Walker that a 9 mm handgun was missing from the residence and was not in the bag, but that Blizzard was not sure whether his father had the handgun with him. Walker reported that three rounds had been fired in the house and that there were no signs of forced entry.

The license plate number provided by Blizzard came back to a Jeep registered to D. Wilson at 1301 Fair Drive. After locating a red Jeep at the Fair Drive residence, numerous officers were dispatched to that residence, looking for two white females and a male.

Back at the Emert residence, Walker spoke with Emert three times on the phone. During the first conversation, Emert stated that "Donna Wilson" had his permission to be at the house. During the second conversation, Emert stated that on the basis of what he knew he would not want to press charges, but that he needed more information and his decision depended upon what he learned about what happened. After receiving a call from Plaintiff Judy Hurt, Emert called Walker and requested that the police "slow things down."

Meanwhile, at the Fair Drive residence, the officers observed a woman leave in the

---

* The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

red Jeep. After seeing the officers, the woman backed the Jeep into the driveway and returned inside the house. The officers twice observed a male walk outside the house and then back inside.

When the male, Plaintiff Brian Davis, walked outside the residence a third time, officers arrested him. Shortly thereafter, Plaintiffs Hurt and Donna Wilson walked outside the residence and were also arrested. Officers then went inside the house to conduct a protective sweep.

Plaintiffs were held at the Fair Drive location for about an hour, transferred to jail holding cells, and ultimately released about midnight after giving statements to police detectives. Upon returning home, Plaintiffs found evidence that the house had been searched: items had been pulled from drawers and cabinets, furniture had been moved, and someone had poked through the fireplace with a golf club. No charges were filed against Plaintiffs.[1]

Plaintiffs filed this civil rights action in state court, alleging various state law claims and federal constitutional claims regarding excessive force, conditions of confinement, unlawful arrest, and unreasonable search. Defendants removed the action to federal court and filed a motion for summary judgment. The district court granted Defendants summary judgment on the excessive force and conditions of confinement issues. The district court denied Defendants summary judgment on the unlawful arrest and unreasonable search issues, finding that Defendants were not protected by qualified immunity because factual disputes remain.

## II.

As recently noted in *Risbridger v. Connelly*, 275 F.3d 565 (6th Cir.2002), "[a] district court's decision rejecting an individual defendant's claim to qualified immunity is immediately appealable to the extent that it raises a question of law, notwithstanding the absence of a final judgment." *Id.* at 568 (citing *Behrens v. Pelletier*, 516 U.S. 299, 310–11, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996); *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). Review of the denial of qualified immunity is *de novo*. *Id.*

A qualified immunity analysis consists of two questions: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right; and (2) if a violation could be made out on a favorable view of the parties' submissions, was the right clearly established? *Saucier v. Katz*, 533 U.S. 194, 201–02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

On the facts alleged, Walker was at the Emert residence at all relevant times and did not order or take part in the arrest or the protective sweep. Having committed no violation on the facts alleged, he is entitled to qualified immunity regarding the unlawful arrest and unreasonable search allegations.

With respect to the other officers, we follow *Saucier*'s two steps for determining qualified immunity. The first question is whether, given the facts alleged by Plaintiffs, the initial arrest was constitutionally valid. Probable cause may be based on

---

1. As it turns out, none of the Plaintiffs had caused the disturbance in the Emert residence. Instead, Angel Olsen (Hurt's daughter) had fired the three shots after becoming intoxicated and strewing Emert's guns and ammunition about the house. Emert first learned about the incident from his girlfriend, Hurt. Wilson and Davis had driven to the Emert residence, collected all the guns and ammunition in a bag, took Olsen to her home, and then returned to the Fair Drive residence.

the collective knowledge of the police, rather than solely upon what the arresting officer knew. *United States v. McManus*, 560 F.2d 747, 750–51 (6th Cir.1977).

■ Here, viewing the facts alleged in the light most favorable to Plaintiffs, we find that the arrest was not supported by probable cause. At the time of arrest,[2] the officers collectively were aware of the following facts: the owner's son had advised that the Emert residence had been burglarized; shots had been fired inside the residence; at least one shot went out into the neighborhood; a white male had gathered up a bag of guns and ammunition from the residence and put them in a vehicle he was driving: the white male returned the bag after being approached by the owner's son; one weapon was still unaccounted for; the three suspects had left the Emert residence despite being told that police had been called; one of the females was very intoxicated; the vehicle the suspects were driving was located at the Fair Drive residence; a suspect had made a suspicious foray into the neighborhood in the jeep but retreated when she saw police.

In making the probable cause determination, officers must consider the totality of the circumstances, recognizing both the inculpatory and exculpatory evidence before determining if they have probable cause to make an arrest. *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir.2000). Here, the following exculpatory facts were discovered prior to the arrest:[3] the victim (homeowner Emert) was "wishy-washy" and didn't know whether he wanted to press charges; there was some indication that the eyewitness (Blizzard) was mistaken; the suspect who shot up the house had been staying there and working on the house with permission from the owner.

Considering both inculpatory and exculpatory facts in the light most favorable to the Plaintiffs, we find that the arrest was not supported by probable cause. Moreover, no reasonable officer with knowledge of these facts would believe that the arrest was supported by probable cause. Because the facts alleged show the officers' conduct violated a clearly established constitutional right, the officers are not entitled to qualified immunity on the unlawful arrest claim. A jury must determine (1) whether probable cause existed for the arrest, (2) whether the exculpatory facts negate probable cause, and (3) which officers knew the exculpatory facts.

We therefore uphold the district court's denial of qualified immunity to Defendants regarding the false arrest allegations. Because a jury question remains as to whether the arrest was supported by probable cause, we need not address the issues related to the protective sweep. Specifically, it is clearly established that the protective sweep in this case is invalid if the underlying arrest is invalid.

**AFFIRMED** on all appeals except for Walker's. We **REVERSE** and **REMAND** the case against him for further proceedings consistent with this decision.

---

2. The arrest occurred when the officers initially took the suspects into custody. The district court reasoned that the officers were merely conducting a *Terry* stop when they initially took the suspects into custody, and that the arrest took place at the moment Plaintiffs were transported to the police station. We disagree. Because the officers did not investigate or gather information after taking the suspects into custody, the act of taking the suspects into custody was an arrest, not a *Terry* stop.

3. At this stage in the litigation, it is not clear which of the Defendants knew which exculpatory facts at the time of arrest.