*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0050p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DONNA D. WILSON; JUDY HURT; BRIAN DAVIS,
>  *Plaintiffs-Appellants,*

> *v.*

Nos. 05-5615/5616

ROGER MORGAN; ADRIAN BARNES; ROBERT
HOWARD; TIM LAYCOCK; ROBERT MANGES; JIM
WRIGHT; JOHN WILSON; TIM HUTCHISON, in his
official capacity; KNOX COUNTY, TENNESSEE,
>  *Defendants-Appellees.*

---

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 99-00461—C. Clifford Shirley, Jr., Magistrate Judge.

Argued: November 29, 2006

Decided and Filed: February 1, 2007

Before: MARTIN and GUY, Circuit Judges; CARR, Chief District Judge.[*]

---

## COUNSEL

**ARGUED:** Herbert S. Moncier, LAW OFFICES OF HERBERT S. MONCIER, Knoxville, Tennessee, for Appellants. Mary A.R. Stackhouse, Knoxville, Tennessee, Robert H. Watson, Jr., WATSON, ROACH, BATSON, ROWELL & LAUDERBACK, Knoxville, Tennessee, for Appellees. **ON BRIEF:** Herbert S. Moncier, LAW OFFICES OF HERBERT S. MONCIER, Knoxville, Tennessee, for Appellants. Mary A.R. Stackhouse, Knoxville, Tennessee, Robert H. Watson, Jr., Hanson R. Tipton, WATSON, ROACH, BATSON, ROWELL & LAUDERBACK, Knoxville, Tennessee, John E. Owings, KNOX COUNTY LAW DIRECTOR'S OFFICE, Knoxville, Tennessee, for Appellees.

---

## OPINION

---

RALPH B. GUY, JR., Circuit Judge. Plaintiffs appeal from a number of orders and rulings made before and after a second trial on the plaintiffs' claims for false arrest and imprisonment in

---

[*] The Honorable James G. Carr, Chief United States District Judge for the Northern District of Ohio, sitting by designation.

violation of state law and for deprivation of their federal constitutional rights in violation of 42 U.S.C. § 1983. Plaintiffs Donna Wilson, Judy Hurt, and Brian Davis brought various claims against individual officers and Knox County, Tennessee, after the plaintiffs were arrested, detained for about three hours, and then released without any charges being filed against them. We conclude that none of the arguments made by plaintiffs warrant reversal, and we affirm.

## I.

This court summarized the events giving rise to this action in our prior opinion resolving the defendants' appeal from the denial of qualified immunity:

> On August 8, 1998, [Officer] Andy Walker was dispatched to investigate a disturbance at Richard Emert's residence in Knoxville[,] Tennessee. When Walker arrived he found Emert's son, Mike Blizzard. Blizzard reported that a "Judy Wilson" had fired a gun in the house, and that she had left the scene with two people (one male, one female) in a red Jeep, leaving behind a bag of weapons and ammunition taken from inside the house. Blizzard told Walker that a 9 mm handgun was missing from the residence and was not in the bag, but that Blizzard was not sure whether his father had the handgun with him. Walker reported that three rounds had been fired in the house and that there were no signs of forced entry.
>
> The license plate number provided by Blizzard came back to a Jeep registered to D. Wilson at 1301 Fair Drive. After locating a red Jeep at the Fair Drive residence, numerous officers were dispatched to that residence, looking for two white females and a male.
>
> Back at the Emert residence, Walker spoke with Emert three times on the phone. During the first conversation, Emert stated that "Donna Wilson" had his permission to be at the house. During the second conversation, Emert stated that on the basis of what he knew he would not want to press charges, but that he needed more information and his decision depended upon what he learned about what happened. After receiving a call from Plaintiff Judy Hurt, Emert called Walker and requested that the police "slow things down."
>
> Meanwhile, at the Fair Drive residence, the officers observed a woman leave in the red Jeep. After seeing the officers, the woman backed the Jeep into the driveway and returned inside the house. The officers twice observed a male walk outside the house and then back inside.
>
> When the male, Plaintiff Brian Davis, walked outside the residence a third time, officers arrested him. Shortly thereafter, Plaintiffs Hurt and Donna Wilson walked outside the residence and were also arrested. Officers then went inside the house to conduct a protective sweep.
>
> Plaintiffs were held at the Fair Drive location for about an hour, transferred to jail holding cells, and ultimately released about midnight after giving statements to police detectives. Upon returning home, Plaintiffs found evidence that the house had been searched: items had been pulled from drawers and cabinets, furniture had been moved, and someone had poked through the fireplace with a golf club. No charges were filed against Plaintiffs.[1]
>
> > [1]As it turns out, none of the Plaintiffs had caused the disturbance in the Emert residence. Instead, Angel Olsen (Hurt's daughter) had fired the three shots after becoming intoxicated and strewing Emert's

> guns and ammunition about the house. Emert first learned about the incident from his girlfriend, Hurt. Wilson and Davis had driven to the Emert residence, collected all the guns and ammunition in a bag, took Olsen to her home, and then returned to the Fair Drive residence.

*Wilson v. Morgan*, 54 Fed. A'ppx 195, 196-97 (6th Cir. 2002).

This occurred on August 8, 1998, and suit was filed one year later. Amended complaints were filed, discovery was conducted, and defendants moved for summary judgment. The magistrate judge granted in part and denied in part the defendants' motion for summary judgment in October 2001, dismissing a number of claims but denying qualified immunity on others.[1] Defendants appealed, and this court affirmed the denial of qualified immunity except as to Officer Walker.

The case proceeded to trial in March 2004, but the jury was unable to reach a verdict and a mistrial was declared. A few days before the mistrial, plaintiffs filed a motion seeking injunctive relief against the county. That motion was denied, which plaintiffs argue was error. After the mistrial, defendants renewed their earlier motions for judgment as a matter of law, which the magistrate judge granted in part and denied in part on November 23, 2004. That decision narrowed the claims to be tried, and is challenged on appeal. Plaintiffs also moved to bifurcate the second trial so that their claims against the county would be tried first. The magistrate judge agreed to bifurcation, but concluded that the claims against the individual officers should be tried first instead.

The bifurcated second trial commenced on January 25, 2005, and the jury returned its verdicts on February 3, 2005. Due to the earlier rulings, the only federal constitutional claims submitted to the jury were: (1) Hurt's claim that she was arrested without probable cause by Officers Manges and Laycock; and (2) Wilson's and Hurt's claims that Manges, Laycock, and three other officers exceeded the lawful scope of a protective sweep of their residence on the night of the arrests. The jury returned verdicts in favor of the defendants on each of these § 1983 claims. Also presented to the jury were the claims of Wilson, Hurt, and Davis for false arrest and imprisonment under Tennessee law. On those claims, the jury found that Manges and Laycock were liable to each of the plaintiffs and awarded compensatory damages to Hurt, Wilson, and Davis for $15,000, $10,000, and $5,000, respectively.

After the verdicts were entered, the magistrate judge directed verdicts against the county pursuant to Tenn. Code Ann. § 8-8-302, in the amount of the damages the jury had awarded to the plaintiffs on their state law claims. The magistrate judge also ruled that the second phase of the trial would not be needed since (1) the county could not be liable under § 1983 where no constitutional violation had been found; and (2) no trial was necessary on the state law claim that the county was liable for negligent supervision of Laycock and Manges under the Tennessee Governmental Tort Liability Act because plaintiffs could not recover twice for the same damages.

On February 8, 2005, judgment was entered in favor of plaintiffs Wilson, Hurt, and Davis, and against defendants Manges, Laycock, and Knox County, Tennessee. After the magistrate judge resolved a number of post-trial motions, including plaintiffs' motions to revise the judgment and for attorney fees, this appeal followed.

---

[1] The parties consented to have the case transferred to a magistrate judge for final disposition.

## II.

### A.          § 1983 Claims for Arrest without Probable Cause

As noted above, the magistrate judge granted judgment as a matter of law to the individual defendants on the claims of Wilson and Davis (but not Hurt) that they were arrested without probable cause in violation of their Fourth Amendment rights. With respect to Hurt's claim, the magistrate judge found that only Manges and Laycock were involved in her arrest. In the second trial of Hurt's claim, the jury found in favor of Manges and Laycock. On appeal, plaintiffs challenge the standards applied to such a claim, the conclusion that there was probable cause to arrest Wilson and Davis as a matter of law, and the dismissal of officers not involved in Hurt's arrest.

### 1.          42 U.S.C. § 1988(a)

We begin, as plaintiffs do, with the argument that 42 U.S.C. § 1988(a) required that Tennessee law be applied to their federal claim of arrest without probable cause under § 1983. The magistrate judge found (without challenge on appeal) that Tennessee imposes a greater obligation to investigate a claim of innocence in connection with state law claims for false arrest and imprisonment than is required for probable cause to arrest under the Fourth Amendment. Specifically, relying on *Woods v. Harrell*, 596 S.W.2d 92, 96 (Tenn. Ct. App. 1979), the magistrate judge noted that "there is a distinction between Tennessee law and federal constitutional law concerning the duty to independently investigate a plaintiff's claim of innocence." As explained in *Woods*, although the Supreme Court held in *Baker v. McCollan*, 443 U.S. 137 (1979), that an arrest without an independent investigation of the accused's guilt does not amount to a constitutional violation for purposes of §1983, the Court in *Baker* also noted that the arrest would probably be actionable in tort under state law. In fact, it was under just such a tort standard that the jury found in favor of the plaintiffs on their state law claims of false arrest and imprisonment.

Plaintiffs urge us to find that because they could not prevail on their federal constitutional claim, § 1988(a) required the court to "borrow" the more stringent state standard in determining whether the defendants were liable under § 1983. The language of § 1988(a) directs that courts look first to the laws of the United States "so far as such laws are suitable to carry the same into effect." 42 U.S.C. § 1988(a). If there is no suitable federal rule, courts consider application of state "common law, as modified and changed by the constitution and statutes" of the forum state. *Id*. Finally, courts are to apply state law only if it "is not inconsistent with the Constitution and laws of the United States." *Id*.

In this case, and in this circuit, the issue of whether the police have a duty under the federal Constitution to investigate for potentially exculpatory evidence has been asked and answered. Put another way, the specific issue on which plaintiffs urge us to apply Tennessee state law has been resolved under federal law. Also, as plaintiffs concede, Tennessee law on the issue is inconsistent with the federal law as articulated by this court in *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999). The express terms of § 1988(a) prevent us from *replacing* federal law with more favorable state law, as plaintiffs would have us do.**[2]**

---

**[2]**Plaintiffs rely on the Second Circuit's statement that "[i]n analyzing § 1983 claims for unconstitutional false arrest, we have generally looked to the law of the state in which the arrest occurred." *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004). We do not agree with the proposition that § 1988(a) permits adoption of the state law standard for probable cause. While the court in *Davis* applied Connecticut law to determine which party had the burden of proving the absence of probable cause, the burden of proof issue was not one answered by federal law and it therefore may have been appropriate under § 1988(a) to borrow from state law to resolve the issue.

Finally, states cannot create federal constitutional rights actionable under § 1983. *Harrill v. Blount County*, 55 F.3d 1123, 1125-26 (6th Cir. 1995) ("If states could vary these federal constitutional rights by statute or local ordinance, the federal constitutional law governing arrest would vary from state to state[.]"). As the Supreme Court explained:

> Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles. Just as "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner," *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official.

*Baker*, 443 U.S. at 146.

### 2.      Due Process and Equal Protection

In another permutation of this argument, plaintiffs argue that they can prove § 1983 claims for violation of federal due process and equal protection rights based on the denial of their right to be free from false arrest and imprisonment under Tennessee law. The sum of plaintiffs' claims in this regard is found in one paragraph of their brief on appeal, in which they argue that the defendants subjected them to "arbitrary and disparate treatment by denying [them] their clearly established right to be free from false arrest provided them by Tennessee law."

These claims are without merit. The Equal Protection Clause prohibits states from making "distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 312 (6th Cir. 2005). As in *Radvansky*, plaintiffs cannot make out an equal protection claim because plaintiffs merely allege that they were treated unfairly by the defendants, not that they were members of a protected class or treated differently from others. Likewise, the plaintiff in *Radvansky* also argued that the defendants deprived him of liberty without due process by arresting him without probable cause. We flatly rejected that theory because "it is the Fourth Amendment which establishes procedural protections in this part of the criminal justice area." *Id*. at 313.

This brings us to the heart of plaintiffs' appeal concerning the § 1983 claims for arrest without probable cause—the magistrate judge's decision granting judgment as a matter of law.

### 3.      Judgment as a Matter of Law

Defendants moved for judgment as a matter of law in the course of the first trial, and at the conclusion of the first trial, and then renewed their motions after the mistrial was declared. FED. R. CIV. P. 50(a). Judgment as a matter of law is appropriate where, after a party has been fully heard on an issue, there is no legally sufficient evidentiary basis for a reasonable juror to find for that party on that issue. *McCombs v. Meijer, Inc.*, 395 F.3d 346, 352-53 (6th Cir. 2005). We review the entry of judgment as a matter of law *de novo*. *Id*. at 352.

#### a.      Probable Cause

For Fourth Amendment purposes: "Probable cause necessary to justify an arrest is defined as 'whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.'" *Radvansky*, 395 F.3d at 302 (alteration in original) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "[T]he existence of

probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000). The magistrate judge reviewed the evidence known to the arresting officers, decided that the evidence presented at the first trial demonstrated that the arresting officers were not aware of the exculpatory evidence known to other officers, and concluded as a matter of law that the officers had probable cause to arrest Wilson and Davis.

First, plaintiffs contend that it was error for the magistrate judge to have revisited the question of whether there was probable cause to arrest Davis and Wilson because our decision affirming the denial of qualified immunity was the "law of the case." The law of the case doctrine precludes consideration of issues that have been decided in a previous appeal. *Burks v. O'Connor, Kenny Partners, Inc.*, 77 Fed. App'x 351, 354 (6th Cir. 2003) (unpublished disposition). In this court's earlier decision, we concluded:

> In making the probable cause determination, officers must consider the totality of the circumstances, recognizing both the inculpatory and exculpatory evidence before determining if they have probable cause to make an arrest. *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). Here, the following exculpatory facts were discovered prior to the arrest: the victim (homeowner Emert) was "wishy-washy" and didn't know whether he wanted to press charges; there was some indication that the eyewitness (Blizzard) was mistaken; the suspect who shot up the house had been staying there and working on the house with permission from the owner.

> Considering both inculpatory and exculpatory facts in the light most favorable to the Plaintiffs, we find that the arrest was not supported by probable cause. Moreover, no reasonable officer with knowledge of these facts would believe that the arrest was supported by probable cause. . . . A jury must determine (1) whether probable cause existed for the arrest, (2) whether the exculpatory facts negate probable cause, and (3) which officers knew the exculpatory facts.

*Wilson*, 54 Fed. App'x at 198 (footnote omitted).

Nothing in our prior decision precluded the magistrate judge from considering the probable cause question because it was unclear at that time which officers knew what information. After the evidence was fully developed and presented at the first trial, however, it was clear that the officers at the Fair Drive location did not know the exculpatory evidence known to the officers at Emert's Lyme Lane residence.

Second, plaintiffs argue that it was error to find as a matter of law that there was probable cause to arrest Wilson and Davis. When making the decision to arrest, the officers at Fair Drive had reason to believe that Wilson and Davis had been at the crime scene. Officers at the Fair Drive residence described Wilson and Davis to Blizzard by telephone, and Blizzard confirmed that they were two of the three persons he had seen at his father's home. The Jeep that had been at Lyme Lane was parked in the driveway at Fair Drive. Moreover, the officers had reason to believe that (1) Wilson and Davis left the crime scene with the woman identified as the shooter; (2) a disturbance, possibly a burglary, had occurred at Emert's home; (3) shots had been fired in Emert's home; and (4) Emert's guns and ammunition had been removed from his home. Most of the firearms were left in a bag on Emert's driveway, but the officers had reason to believe that the suspects might have taken one firearm with them. Because this information was sufficient to lead a prudent officer to conclude that Wilson and Davis had committed an offense, the magistrate judge correctly decided that a reasonable juror could come to only one conclusion—the officers had

probable cause to arrest Davis and Wilson for any one of several crimes including theft, destruction of property, reckless endangerment, and/or vandalism.

The evidence demonstrated that Detective Lett, who was investigating at Emert's Lyme Lane residence, became aware of the following potentially exculpatory facts after plaintiffs were handcuffed but before they were taken downtown to be questioned: Emert did not seem interested in pressing charges; Blizzard's eyewitness account seemed inconsistent; and the "intruder" probably had permission to be in the house. After Lett had that information, he called Lieutenant Barnes at the Fair Drive residence, confirmed that Barnes had the plaintiffs in custody, and instructed Barnes to take the plaintiffs downtown for investigation of the crimes of vandalism, destruction of property, and reckless endangerment.[3] There is no evidence, however, that Lett or Walker shared the allegedly exculpatory evidence with the arresting officers at the Fair Drive location.

Plaintiffs argue that the magistrate judge erred by ignoring that the 911 broadcast, which officers admitted was their primary source of information, contained exculpatory information. The officers testified that they did not recall hearing certain portions of the 911 broadcast, which plaintiffs contend is not conclusive. Plaintiffs rely on this court's statement in affirming the district court's denial of qualified immunity, that the officers needed to consider the totality of the circumstances, including both inculpatory and exculpatory evidence, before deciding whether there was probable cause to arrest. *Wilson*, 54 Fed. App'x at 198. Although we noted that some exculpatory evidence was known prior to the arrest, we also observed that it was not clear at that stage of the litigation which defendants knew which exculpatory facts at the time of the arrest. *Id.* at 198 n.3.

While plaintiffs make no effort to identify what portions of the 911 broadcast they think are exculpatory, plaintiffs stressed in a motion to revise the judgment that the 911 broadcast indicated that officers at the Fair Drive scene should have known that Wilson was not the suspected perpetrator because the description of her clothing did not match the clothing worn by the "shooter." Wilson was described as wearing brown shorts and a blue shirt, while the woman who had fired shots in the Lyme Lane residence was described as wearing white shorts and a blue shirt. Even if the officers at the Fair Drive scene were aware that, when first observed, Wilson's clothes did not match the description of the clothes worn by the person suspected of firing the gun at the Lyme Lane house, the officers still had probable cause to arrest. This "exculpatory" evidence suggested, at most, that Wilson was not the shooter. But even if Wilson was not the shooter, her being at the scene and driving the shooter away possibly implicated her in a crime.

Third, plaintiffs contend that the magistrate judge's determination that there was probable cause to arrest at the Fair Drive residence should not have ended the matter. Rather, plaintiffs argue that the magistrate judge should also have determined whether there was probable cause at the following points in time: (1) when plaintiffs were handcuffed in the yard of Fair Drive; (2) when plaintiffs were transported from Fair Drive to the jail; and (3) when they were placed in cells at the jail. Plaintiffs maintain that even if there was probable cause to arrest at the Fair Drive residence, the officers should have continued to investigate further. On the contrary, this court has held that the Fourth Amendment does not impose such a duty.

"Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused. In fact, law enforcement 'is under no obligation to give any credence to a suspect's story [or alibi] nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999) (citations

---

[3]Lett is not a defendant in this case, and Walker was dismissed because he did not participate in the arrest.

omitted) (alteration in original); *Accord McKinney v. Richland County Sheriff's Dep't*, 431 F.3d 415, 419 (4th Cir. 2005). The arresting officers in *Ahlers* could have discovered exculpatory evidence had they looked into the plaintiff's alibi or sought out corroborating evidence of his alibi before arresting him. We held in *Ahlers*, however, that while officers cannot "turn a blind eye" to potentially exculpatory evidence in making the initial probable cause determination, officers are not required to believe the plaintiff's alibi or investigate it before determining that probable cause to arrest exists. *Id*. at 372.

Here, officers had probable cause to arrest Wilson and Davis when they exited the home on Fair Drive. The officers were not required to call Emert, as plaintiffs requested. Nor were the officers required to investigate further before placing plaintiffs in police vehicles for transport to the police station or placing them in holding cells. Those events were all part of one arrest, and the officers were not required to make a separate probable cause determination at each step of the arrest. Nor was there evidence that the arresting officers, or those involved in transporting or lodging the plaintiffs at the jail, had exculpatory evidence that the plaintiffs contend would have negated probable cause.[4]

Finally, plaintiffs argue that the magistrate judge's articulation of the Fourth Amendment standard conflicts with the earlier finding on summary judgment, which we later affirmed, that: "Once the police detained the plaintiffs, they had a duty to investigate whether or not probable cause existed to arrest the plaintiffs." The magistrate judge reasoned on summary judgment that plaintiffs' detention and handcuffing was a *Terry* stop that required only reasonable suspicion, which ripened into an arrest when plaintiffs were transported to the police station. In the first appeal, this court held that the handcuffing constituted the arrest for which probable cause was required. The magistrate judge recognized that the officers were required to conduct an investigation to determine whether probable cause existed, but did not hold or suggest that the officers were required to investigate after probable cause was established.

### b.      Dismissal of all Officers except Manges and Laycock

Plaintiffs contend that the magistrate judge erred in granting qualified immunity to all the individual defendants except Manges and Laycock on Hurt's § 1983 claim for arrest without probable cause. The magistrate judge reasoned that plaintiffs did not show that these other officers were responsible for her arrest, relying on our decision in *Ghandi v. Police Dep't*, 747 F.2d 338, 352 (6th Cir. 1984). There, we held that an officer who is merely present at a scene but is not directly responsible for the complained of action is entitled to qualified immunity from suit under § 1983.

Plaintiffs argue that Barnes, Morgan, Howard, Wright, and Wilson acted in "joint concert" with Manges and Laycock to arrest all three plaintiffs. Plaintiffs' reliance on *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970), for the proposition that officers acting in "joint concert" may be liable is misplaced. The portion of *Adickes* providing for liability based on joint participation was part of a discussion of when a private party may be liable as a "state actor" under § 1983. The Court held that: "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with

---

[4]Relatedly, plaintiffs argue that the officers were required to release plaintiffs as soon as they realized their alleged mistake in arresting them. In support, plaintiffs rely on cases which held that when police executing search warrants mistakenly enter the wrong residence, they must retreat as soon as they know or should have known of their mistake. *See Pray v. City of Sandusky*, 49 F.3d 1154, 1159 (6th Cir. 1995); *Maryland v. Garrison*, 480 U.S. 79 (1987). Plaintiffs imply that because no charges were filed against them, their arrests were improper. In many instances, however, probable cause to arrest exists, and the arrest is proper, even though charges are not pursued. A decision not to file charges does not mean probable cause to arrest was absent.

the State or its agents." *Id*. at 152 (internal quotation marks omitted) (citation omitted). *Adickes* does not alter *Ghandi*'s requirement that only officers with direct responsibility for the challenged action may be subject to § 1983 liability. Plaintiffs presented no evidence connecting Morgan, Howard, Wright, or Wilson to Judy Hurt's arrest. Barnes, the senior officer at the scene, testified that he did not even know that plaintiffs were in custody until after they were in handcuffs sitting on the lawn. Judgment as a matter of law was properly granted as to these five defendants.[5]

## B. § 1983 Claim for Illegal Search

With respect to the separate claim for unlawful search of the Fair Drive residence on the night of the arrests, plaintiffs appeal from the magistrate judge's ruling on summary judgment that a properly conducted protective sweep could be lawful under *Maryland v. Buie*, 494 U.S. 325 (1990), even though the arrests were made outside of the residence. Summary judgment is proper when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). We review a decision granting summary judgment *de novo*. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997).[6]

This court noted in deciding the first appeal that it "is clearly established that the protective sweep in this case is invalid if the underlying arrest is invalid." *Wilson*, 54 Fed. App'x at 198. Since the magistrate judge found that there was probable cause to arrest Wilson under the Fourth Amendment, the validity of the sweep was not an issue at trial. Ultimately, the jury found not only that Hurt's arrest was supported by probable cause under federal law, but also that the officers had not exceeded the permissible scope of that search.

The evidence was that as plaintiffs sat handcuffed on the lawn, an officer broadcast over the radio that it appeared that someone else was in the house because a light inside had been turned on and off. Defendants Wilson, Barnes, Wright, Laycock, and Manges entered the residence and, according to the officers, conducted a protective sweep to ascertain whether there were any other suspects in the home. The officers testified that they looked for weapons, but only those that were in plain view, and their sweep did not reveal anyone else in the house. Plaintiffs maintained that items had been moved, indicating that the officers had exceeded the scope of a plain-view search.

It is established that officers making an arrest in a home may, as a precautionary measure, search spaces immediately adjoining the place of arrest for persons who might pose an immediate danger to them. *Buie*, 494 U.S. at 334. Officers may conduct a more pervasive search when they have "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id*. The sweep may extend only to those places a person may be found and may last only as long as necessary to "dispel the reasonable suspicion of danger." *Id*. at 336.

This court has explicitly rejected plaintiffs' position that an arrest outside a residence renders a protective sweep of the inside of the home invalid *per se. United States v. Colbert*, 76 F.3d 773,

---

[5] Plaintiffs point out that *Ghandi* reviewed a federal § 1983 claim and, they argue, it should have no impact on plaintiffs' state law false arrest claims. According to plaintiffs, we should look instead to *Williamson Leasing Co. v. Kephart*, 627 S.W.2d 683 (Tenn. Ct. App. 1981), a decision providing guidance for when a corporate venture is a "joint venture" for the purpose of imposing liability on accommodation makers on a promissory note. Obviously, that decision has little relevance here. Plaintiffs point to no Tennessee authority, nor are we aware of any, which allows liability for false arrest to be imposed against an officer who had no participation in the decision to arrest.

[6] Plaintiffs do not contest the magistrate judge's determination that Davis did not have an expectation of privacy in the premises.

776-778 (6th Cir. 1996). In *Colbert*, police officers arrested the defendant in the parking lot, some 50 feet from the apartment where he had been staying, and immediately conducted a protective sweep of the apartment. *Id.* at 775-76. On appeal, the defendant argued that a protective search is never justified following an arrest outside a home. We concluded that

> the analytical approach taken by the Supreme Court in *Buie* and this Circuit in *Biggs* [*United States v. Biggs*, 70 F.3d 913, 915-16 (6th Cir. 1995),] argues against the adoption of such a bright-line rule.
>
> . . . . We believe that, in some circumstances, an arrest taking place just outside a home may pose an equally serious threat to the arresting officers. In our view, the fact that the arrest takes place outside rather than inside the home affects only the inquiry into whether the officers have a reasonable articulable suspicion that a protective sweep is necessary by reason of a safety threat. We decline to adopt a bright-line rule that prohibits police officers from conducting a protective sweep of a home every time they arrest a defendant outside that home, regardless of the potential danger from other persons inside.

*Id.* at 776-77 (citation omitted). Applying that standard to the facts, the court in *Colbert* concluded that the protective sweep was not valid because officers did not have any information indicating that another person might have been in the apartment. *Id.* at 778.

Conversely, in this case, the officers had reason to believe that (1) there was at least one other individual in the home based on the radio transmission that a light had been turned on and off; and (2) there might have been a weapon in the home based on Blizzard's report that a firearm may have been missing from Emert's home. Together, these facts provide the articulable suspicion that a person possibly posing a danger still lurked in the Fair Drive residence. *See e.g. United States v. Taylor*, 248 F.3d 506, 510 (6th Cir. 2001) (concluding that officers' protective search was justified where, prior to arresting defendant in his apartment, they heard shuffling sounds indicating the presence of a second person who they believed was likely to have weapons); *United States v. Bass*, 315 F.3d 561, 564 (6th Cir. 2002) (holding that officers were justified in conducting a protective sweep after arresting defendant in his apartment where the female who let the officers in indicated there might be more than one other person inside). Plaintiffs have not demonstrated that a material question of fact existed on this issue. Because the officers had reason to believe that another person, possibly armed (because a firearm was still unaccounted for and shots had been fired at Lyme Lane) and possibly intoxicated (the intoxicated woman from Lyme Lane was still unaccounted for), could be in the house, no reasonable juror could conclude that the officers were without justification in conducting a protective sweep of the home.[7]

## C.    Second Trial

### 1.    Bifurcation

A court may bifurcate a trial "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." FED. R. CIV. P. 42(b); *Yung v. Raymark Indus., Inc.*, 789 F.2d 397, 400 (6th Cir. 1986). In determining whether separate trials are appropriate, the court should consider several facts, including "the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy." *Martin v.*

---

[7]Plaintiffs' additional contention that the magistrate judge incorrectly applied a bright-line rule that any arrest outside a home justifies a protective sweep inside a home is simply an incorrect description of the court's reasoning. The magistrate judge articulated the correct standard and found that the officers had a reasonable belief that the home harbored another possibly dangerous person based on the radio broadcast that lights had been turned on and off.

*Heideman*, 106 F.3d 1308, 1311 (6th Cir. 1997). We review a district court's decision to bifurcate a trial for abuse of discretion. *Saxion v. Titan-C-Mfg., Inc.*, 86 F.3d 553, 556-57 (6th Cir. 1996).

Plaintiffs moved to bifurcate the second trial to separate their claims against the individual defendants from their claims against the county, but argued that the claims against the county should proceed first. Plaintiffs argued that the county had a custom and practice of using investigative detentions that amounted to arrest without probable cause that was itself a violation of federal law sufficient to establish municipal liability under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978). Defendants agreed that separate trials were appropriate, but argued that the claims against the individual officers should proceed first instead. The magistrate judge determined that bifurcation would be an expeditious way to proceed, but decided that, in light of *Monell*, trial should proceed first on the claims against the individual officers. We find no abuse of discretion in this regard.

There can be no *Monell* municipal liability under § 1983 unless there is an underlying unconstitutional act. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). In *Heller*, like this case, the district court bifurcated a § 1983 excessive force trial, trying the case against the individual defendant first. *Id.* at 797. The jury returned a verdict for the officer, and the district court then dismissed the action against the municipality, reasoning that there could be no municipal liability if the officer had been exonerated. *Id.* at 798. Addressing this question, the Court unequivocally held that: "If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point." *Id.* at 799.

The magistrate judge's decision to bifurcate the trial was eminently reasonable in the interests of judicial economy and avoiding possible juror confusion. It was not an abuse of discretion to bifurcate individual liability from municipal liability, and it would be illogical to try the municipality first since its liability under § 1983 could not be determined without a determination of the lawfulness of the individuals' actions. *Tinch v. City of Dayton*, Nos. 94-3436/94-3516, 1996 WL 77445, at *3 (6th Cir. February 20, 1996) (unpublished disposition) (affirming decision, in a § 1983 action, to bifurcate individual officers' liability from municipality's liability and trying individual officers first); *see also Wilson v. Town of Mendon*, 294 F.3d 1, 7 (1st Cir. 2002); *Treece v. Hochstetler*, 213 F.3d 360, 365 (7th Cir. 2000); *Amato v. Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 1999). In fact, because the jury found no constitutional violation by the individual defendants, the county could not have been found liable under *Monell* for an allegedly unconstitutional custom or policy.

Plaintiffs also argue that trying the claims against the individual officers first was prejudicial because it deprived them of the opportunity to present "habit and practice" evidence that would have shown a practice of investigative detentions and allowed plaintiffs to argue that the officers were acting in conformity with that practice. Bifurcation, however, did not prevent plaintiffs from presenting that evidence. It was rather the magistrate judge's ruling that the evidence was not relevant to the question of individual liability. Plaintiffs attempted to introduce the evidence under Fed. R. Evid. 406, which provides: "Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." The magistrate judge did not err in excluding the evidence under Fed. R. Evid. 401 and 403 because even if the department had a practice of investigative detentions (*i.e.*, arrests based on less than probable cause), such a practice would be irrelevant if the officers had probable cause to arrest.

## 2.      Defendants' Opening Statement

In opening statement, defense counsel told the jury: "The judge has ruled that probable cause existed for the arrest under the Fourth Amendment for Donna Wilson and Brian Davis." Plaintiffs' objection was sustained, but their motion for a mistrial was denied because the magistrate judge believed that defense counsel did not act in bad faith. Plaintiffs argue that the magistrate judge incorrectly applied a "bad faith" standard in denying a mistrial instead of the "prejudice to plaintiffs" standard mandated by *United States v. Dinitz*, 424 U.S. 600 (1976). We review for abuse of discretion the magistrate judge's denial of a motion for a mistrial. *Grossheim v. Freightliner Corp.*, 974 F.2d 745, 752 (6th Cir. 1992).

The magistrate judge in this case instructed the jury to disregard the improper comment at the time and at the close of trial. Specifically, the magistrate judge admonished the jury as follows:

> I will remind you what I previously told you, that this Court has previously ruled on numerous matters before this trial in this case, and you're not to consider those rulings, or concern yourselves with them, or speculate as to what those rulings were, or why those ruling were made.
>
> Rather, you are only to consider the issues before you, the evidence heard in this trial, and the law as I give it to you.

The sustaining of plaintiffs' objection and the subsequent curative instruction lead us to conclude that the magistrate judge did not abuse his discretion in denying the plaintiffs' motion for mistrial.

## 3.      Excluded Evidence of Bias

Plaintiffs appeal from the exclusion of evidence concerning a county ordinance that plaintiffs claimed provided the officers an incentive to lie in order that the county pay any judgment rendered against them. The ordinance in question provides, in pertinent part:

> (d) *Determination of amount of indemnity*. The county executive, after consultation with the law director, shall determine the amount of indemnity, if any, to be paid to or for an employee. The amount of indemnity will be that amount of money which the judgment creditor could collect from the employee as authorized by law; provided, however, that the amount of indemnity shall not exceed those amounts prescribed by T.C.A. § 29-20-101 et seq., or other applicable state law.

KNOX COUNTY, TENN., Ordinance, art. IV, div. 1, § 2-286 (1995). As the magistrate judge correctly held, there is no basis in law or fact for plaintiffs to argue that the ordinance encourages or provides an incentive for sworn witnesses to testify falsely at trial. Nor can it be inferred, as plaintiffs argue, that Knox County encourages sworn witnesses to testify falsely at trial, or that Knox County would enact an ordinance to encourage its employees to lie at trial.

## 4.      Jury Instructions

Plaintiffs contend that the jury instructions on probable cause and comparative fault were incorrect, inadequate, and prejudicially misleading. We review jury instructions as a whole, and an issue as to instructions is a question of law that is reviewed *de novo. Fisher v. Ford Motor Co.*, 224 F.3d 570, 576 (6th Cir. 2000). A judgment may be reversed only if the instructions, viewed as a whole, were confusing, misleading, and prejudicial. *Williams v. Eau Claire Pub. Sch.*, 397 F.3d 441, 445 (6th Cir.), *cert. denied*, 126 S.Ct. 68 (2005).

The magistrate judge's instructions on probable cause were not confusing, misleading, or prejudicial. Although plaintiffs argue that the instruction about the duty to investigate under Tennessee law before determining probable cause was confusing, the magistrate judge prefaced the instruction by stating: "Now, the duty to investigate under Tennessee State law." The magistrate judge had just instructed the jury on the federal probable cause standard, and had instructed that for "Fourth Amendment purposes for the Constitutional claim[, o]nce probable cause has been established, an officer has no further duty to investigate prior to arrest."

Plaintiffs also argue that the magistrate judge erred by instructing the jury as to comparative fault when neither comparative fault nor contributory negligence applies to the tort of false arrest under Tennessee law. The magistrate judge instructed the jury:

> If you find that one or more of the plaintiffs was falsely arrested and imprisoned by one or more of the defendants, you may award such plaintiff damages only for those injuries proximately caused by that arrest and imprisonment by the particular defendant. Further, if you find that the acts of one or more of the plaintiffs, or of a person, or persons other than the defendants, proximately caused the plaintiff's injury, the defendants cannot be held liable for such injuries proximately caused by the plaintiff's own acts, or the acts of another.

While contributory fault was abolished in favor of a comparative fault system in negligence cases, *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992), the instructions approved in *McIntyre* for circumstances involving comparative fault were not given in this case. The language quoted above is found in the discussion of proximate cause, and the jury was also instructed to award damages in an amount that would reasonably and fairly compensate the plaintiffs for the alleged deprivation of civil rights and/or false arrest and imprisonment proximately caused by the defendant police officers. Further, because plaintiffs prevailed on their intentional tort claim, any alleged error in this instruction would be harmless.

### D.          County of Knox

Plaintiffs appeal from both the denial of injunctive relief against the county during the first trial, and the magistrate judge's determination that it was not necessary to conduct a trial with respect to the county's liability under either § 1983 or state law.

#### 1.          Injunctive Relief

While the jury in the first trial was still deliberating, plaintiffs moved for the magistrate judge to issue an injunction prohibiting the county from authorizing investigative detentions, *i.e.*, detentions based on less than probable cause for 48 to 72 hours. After the mistrial was declared, the magistrate judge denied the plaintiffs' motion for an injunction because plaintiffs could not show they were likely to encounter the same allegedly unconstitutional wrong again. The magistrate judge correctly reasoned as follows:

> A plaintiff seeking injunctive relief must demonstrate that he is in immediate danger of sustaining some direct injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 [] (1983). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id.* . . .

> In the instant case, however, none of the plaintiffs can establish that it is reasonably likely that they will encounter the police again. "Because the various plaintiffs' future conduct presumably will give the police no probable cause to arrest them, they cannot expect that they will encounter the police or, if they did, that the

polic[e] would again detain them pending investigation . . . ." *Robinson v. City of Chicago*, 868 F.2d 959, 966 (7th Cir. 1989). Therefore, even if the Knox County Sheriff's Department continued to detain other individuals for investigatory purposes as alleged by the plaintiffs, "the possibility that [the plaintiffs] would suffer any injury as a result of that practice is too speculative." *Id.*

Plaintiffs further argue that even if they have no interest in an injunction for the reasons stated above, they have an interest in obtaining an injunction to meet the prevailing party requirement for an award of attorney fees under 42 U.S.C. § 1988(b). The potential recovery of attorney fees cannot create a case or controversy where none otherwise exists, or else any person could claim they had standing under any statute that allows for recovery of attorney fees because, if they won, they could recover their fees. That would impermissibly expand the established parameters for standing to sue. *See, e.g., Lyons*, 461 U.S. at 102; *Vt. Agency Natural Res. v. United States*, 529 U.S. 765, 771 (2000); *N.E. Fla. Chapter of the Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 663-64 (1993); *ACLU v. Taft*, 385 F.3d 641, 645 (6th Cir. 2004); *United States v. Perry*, 360 F.3d 519, 528 (6th Cir. 2004).

## 2. County's Liability under Tenn. Code Ann. § 8-8-302

Section 8-8-302 provides for a county's liability for the acts of its deputies as follows:

> Anyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves; provided, that the deputy is, at the time of such occurrence, acting by virtue of or under color of the office.

After the jury returned its verdict against Manges and Laycock, the county immediately notified the court that it intended to pay the judgment. Plaintiffs orally moved for judgment as a matter of law against Knox County under § 8-8-302, seeking to hold the county legally bound to pay the judgment. The magistrate judge granted plaintiffs' motion despite plaintiffs' later attempt to argue that a second trial was necessary. Plaintiffs now argue that they had claims under § 8-8-302 that should have gone to a jury—specifically claims that the county was liable for the damages caused by the individual officers whom the magistrate judge had earlier dismissed from the suit. Plaintiffs allege that these other officers inflicted harm by the manner in which they transported plaintiffs to the holding cells and the maltreatment of plaintiffs in the holding cells.

Tennessee law holds that a county may be liable under § 8-8-302, for the acts of its deputies even if the deputies are not defendants in the lawsuit. *McGee v. Wilson County*, 574 S.W.2d 744, 745 (Tenn. Ct. App. 1978). The jury, however, already determined plaintiffs' damages for false arrest and imprisonment under Tennessee law. Plaintiffs presented evidence and argued to the jury that they should consider the entire arrest—from the house to their eventual release at the police station—in determining damages. Plaintiffs had already recovered for the harm inflicted by their wrongful arrest under state law, and the magistrate judge was therefore correct that § 8-8-302 provided no additional recovery.

## 3. Municipal Liability under § 1983

Plaintiffs again repeat their assertion that the county's alleged custom and policy of allowing investigative detentions without probable cause constituted a violation of federal law and a basis for municipal liability under *Monell*. For this reason, plaintiffs now argue that the magistrate judge erred in finding that there was no need to conduct the second phase of the bifurcated trial on § 1983 claims asserted against the county.

As discussed earlier, absent proof that the arrests violated the plaintiffs' federal constitutional rights, there could be no municipal liability under *Monell*. *Heller*, 475 U.S. at 798-99. Nor can plaintiffs rely on the verdicts finding false arrest and imprisonment under Tennessee law to establish municipal liability under § 1983. *Harrill v. Blount County*, 55 F.3d 1123, 1125-26 (6th Cir. 1995). Plaintiffs' insistence otherwise does not make it so.

## E.     Miscellaneous Claims of Error

### 1.     Motion to Amend

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend pleadings "shall be freely given when justice so requires." The decision to permit a post-trial amendment of a complaint is a matter of discretion for the trial court. *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 604 (6th Cir. 2001).

Two days after the first trial, plaintiffs moved to amend their complaint and submitted a 59-page proposed amended complaint that asserted 20 separate causes of action. It named as an additional plaintiff the State of Tennessee on relation of the plaintiffs, and it also named as a defendant the State of Tennessee on relation of the various defendants. Numerous other defendants were added as well. The motion to amend stated without any elaboration that the motion "is made in response to ruling[s] made by this Court prior to the mistrial; new information discovered during the prior trial; and to conform the complaint to issues and evidence developed during the prior trial." The magistrate judge denied the motion to amend:

> To the extent that the plaintiffs' proposed amendment seeks to add parties and/or to assert causes of action which this Court has already ruled upon and rejected, the plaintiff[s'] motion must be denied. To the extent that the plaintiff[s'] proposed amendment seeks to add new defendants, the motion is futile, as such claims would be barred by the statute of limitations. Furthermore, this Court is not aware of any authority which entitles the plaintiffs to sue the State of Tennessee on relation of the various defendants. With respect to the new claims asserted against the individual defendants, the plaintiffs fail to identify the "new information discovered during the prior trial" or how these claims are necessary "to conform the complaint to issues and evidence developed during the prior trial."

> The information on which the plaintiffs base their new allegations have been known to the parties for some time. No reason has been given as to why any of these proposed amendments could not have been brought before the trial. This amendment is dilatory and unnecessarily delayed and therefore should be denied.

After careful review of the proposed amended complaint and the proceedings preceding the motion, we find that the magistrate judge did not abuse his discretion by denying the motion to amend.

### 2.     Disqualification of Defense Attorneys

The Law Director of Knox County, an elected official, represented the Sheriff, Knox County, and the officers in their official capacities. John C. Duffy and Robert H. Watson Jr., private attorneys, represented the individual defendants who were being sued in their individual capacities. Plaintiffs moved to disqualify the private defense attorneys on several occasions, but each motion was denied. On appeal, plaintiffs argue that Duffy and Watson had a conflict of interest in representing the officers while being hired and paid by the Law Director. To prevail, plaintiffs must demonstrate that defense counsel "actively represented conflicting interests and that an actual conflict of interest adversely affected [defense counselor's] performance." *Gordon v. Norman*, 788 F.2d 1194, 1198 (6th Cir. 1986).

In *Gordon*, the plaintiff was driving a car in Knox County when defendant officers pulled him over for speeding. He took a field sobriety test, refused a breathalyzer test, and was taken to a paddy wagon. When he refused to get in, the officers grabbed him and forced him to get into the wagon. The plaintiff claimed that during the struggle he was unnecessarily struck on the head with a billy club and that defendants otherwise used excessive force in arresting him. The individual officers were represented at trial by the law director of the City of Knoxville. The jury returned a verdict in favor of plaintiff, awarding $5,000 in compensatory damages and additional punitive damages. Three of the officers obtained new counsel and argued on appeal that they were deprived of their right to a fair trial and due process because their attorney had a conflict of interest in representing them.

The officers in *Gordon* argued that, even though the City of Knoxville was not a party to the suit, it was the principal client of their attorney, and that this prevented him from exercising independent judgment in representing them. The officers averred to numerous examples of the law director's conflict of interest, including: he told them he was their lawyer "like it or not"; he did not subpoena all the witnesses that the defendants wanted present for trial; they were not told when certain depositions were to be taken and were not present; he never told them that they might be personally liable on a judgment; he never told them until after judgment that the city would not pay any punitive damages; he did not bring certain juror misconduct to the presiding judicial officer's attention after defendants told him about it; he told only one of the defendants that the plaintiff had made an offer to settle for $7,000; he never told them they could retain their own lawyers; and after judgment was entered against them, he told them that he would not authorize payment of the judgment. *Id*. at 1196.

This court found that the defendants had failed to show that they were adversely affected by the purported conflict of interest or that their trial counsel failed to exercise independant judgment depriving them of a fair trial. *Id*. at 1198. Nonetheless, the court cautioned that: "At the same time, we are aware of the great potential for conflict in this field. For this reason . . . there is a 'need for sensitivity to the risk of conflict' in § 1983 suits, and that the judge and the parties have joint responsibility to guard interests that are actually threatened." *Id*. at 1199 (citation omitted). The court also added in a footnote that: "Government attorneys have routinely represented individual defendants as have insurance counsel, post *Monell*, without any thought for the most part as to conflict of interest. The *bar* should be aware of potential ethical violations and possible malpractice claims." *Id*. at 1199 n.5.

In this case, the Law Director did not simultaneously represent the county and the officers in their individual capacities. Instead, the county obtained and paid for independent counsel to represent the officers. Plaintiffs claim this was a "smokescreen" and that the Law Director was the defense attorneys' *de facto* client. Plaintiffs offer no evidence to support their allegation, however. To the contrary, defense attorneys Duffy and Watson stated that the Law Director imposed no control over the representation of their clients. Plaintiffs have not provided any indication of how they were adversely affected by any actual conflict of interest which prejudiced their right to a fair trial.

Plaintiffs aver that Watson became Deputy Law Director for Knox County on February 5, 2005, and contend that he and his firm should at least have been disqualified after that point in time. First, this was after the jury returned its verdicts on February 3, 2005. Second, and more importantly, the *defendants*—the clients allegedly represented by conflicted counsel—have made no objection to their counsel and have made no claim that their counsel had a conflict of interest or

that their interests were compromised in any way.[8]  Finally, plaintiffs have not shown any actual prejudice to the defendants from Watson's representation of the individual officers while serving as deputy law director to the county.

### 3.  Disqualification of Jurors

Three of the eight jurors were residents of Knox County.  Plaintiffs contend that the magistrate judge erred by not excluding residents of Knox County from the jury because of their financial interest in any liability Knox County might incur.  We review for abuse of discretion a court's decision not to strike a juror for cause.  *Cox v. Treadway*, 75 F.3d 230, 239 (6th Cir. 1996).  Plaintiffs cite no authority, nor are we able to locate any, that supports the proposition that residents of a municipality cannot sit on a jury deciding a case in which the municipality is a party.  Moreover, the magistrate judge instructed counsel not to inquire on *voir dire* into the issue of who would pay a potential judgment against the individual officers, thus preventing any potential prejudice.

## F.  Attorney Fees

While a prevailing plaintiff in a § 1983 action may be entitled to recover reasonable attorney fees under 42 U.S.C. § 1988(b), the plaintiffs in this case did not prevail on their § 1983 claims and may not recover attorney fees under § 1988(b).  *See*, *e.g.*, *Wolfe v. Perry*, 412 F.3d 707, 723 (6th Cir. 2005) (agreeing with district court's decision to award § 1988 attorney fees for time expended on § 1983 claims but not for related state law claims); *Karam v. City of Burbank*, 352 F.3d 1188, 1195 n.4 (9th Cir. 2003) (holding that § 1988 only allowed fees upon the successful claim under several federal statutes, including § 1983, and so the plaintiff's state-law malicious prosecution claim did not qualify); *Robles v. Prince George's County*, 302 F.3d 262, 272 (4th Cir. 2002) (holding that a plaintiff who is unsuccessful on a federal claim but successful on a state law claim cannot recover under § 1988); *Kelly v. City of Leesville*, 897 F.2d 172, 176 (5th Cir. 1990) (same).

Finally, plaintiffs sought an award of attorney fees and costs under 28 U.S.C. § 1927,  which authorizes an award against one who multiplies the proceedings unreasonably and vexatiously in the amount reasonably incurred because of such conduct.  Plaintiffs identified eighteen reasons for an award of sanctions against the law director and private attorneys representing the officers in their individual capacities.  Many of the allegations assert that the law director unnecessarily multiplied the proceedings by insisting on separate representation for the officers and the county.  In fact, in *Gordon* this court endorsed the idea of having separate counsel for the municipality and the individual officers.  788 F.2d at 1198.  After carefully considering the other grounds asserted by plaintiffs, we find that the magistrate judge did not abuse his discretion by finding that sanctions were not warranted under § 1927.  *See Eagles, Ltd. v. Am. Eagle Found.*, 356 F.3d 724, 726 (6th Cir. 2004).

### **AFFIRMED.**

---

[8]We acknowledge that Rule 1.7 of the Tennessee Rules of Professional Conduct, note 19, provides that opposing counsel may raise the conflict of interest question.  The rule also explains, however, that "[s]uch an objection should be viewed with caution . . . for it can be misused as a technique for harassment."  Defendants responded to plaintiffs' motion to disqualify in part by arguing that plaintiffs lacked standing to move for disqualification of opposing counsel based on their lack of interest in the outcome of the motion, and the probable reason for the motion was harassment. Plaintiffs responded that their interest in disqualification of defendants' counsel was based on their desire to avoid obtaining a judgment against the officers only to have an appellate court reverse the judgment because of a conflict of interest raised by defendants on appeal.  The magistrate judge concluded that plaintiffs had standing to raise the issue, and neither party appeals that ruling.