**COMMONWEALTH of Kentucky, Appellant,**

v.

**Ronald D. MARR, Appellee.**

No. 2003–SC–000564–DG.

Supreme Court of Kentucky.

April 24, 2008.

Jack Conway, Attorney General, Teresa Young, Special Assistant Attorney General, Louisville, KY, Counsel for Appellant.

David A. Lambertus, Louisville, KY, Counsel for Appellee.

Opinion of the Court by Justice CUNNINGHAM.

The Commonwealth appeals from an opinion of the Court of Appeals affirming a judgment of the Jefferson Circuit Court. The defendant in that case, Ronald D. Marr, was indicted on one count of manufacturing methamphetamine while in possession of a firearm, one count of trafficking in a controlled substance (methamphetamine) in the first degree while in possession of a firearm, one count of illegal use or possession of drug paraphernalia while in possession of a firearm, and one count of illegal possession of a controlled substance (marijuana) while in possession of a firearm. Prior to trial, the Jefferson Circuit Court suppressed certain evidence seized following a pat-down search of Marr. The Commonwealth filed an interlocutory appeal, and the Court of Appeals affirmed the judgment of the trial court. This Court granted discretionary review.

The sole witness at the suppression hearing was Officer Bailey, a Louisville police officer, who testified to the following facts. In April 2001, police received an anonymous tip that methamphetamine was being sold from a body shop in Louisville. The tip included a description of the seller as an older "biker looking" man. Based on this information, officers began surveillance of the body shop. They observed people coming into the shop for short periods of time who did not appear to be bringing in cars for body work. The police concluded that these brief visits were consistent with drug activity.

To further the investigation, the police pulled over one vehicle leaving the business. The individual in the vehicle possessed two pounds of marijuana. Fearing that this arrest would compromise their undercover surveillance of the body shop, the police decided to enter the business and speak with the owner.

Upon their arrival, the police announced themselves to the shop owner and informed him that they were conducting a narcotics investigation. The officers heard a noise from the back of the business and inquired whether anyone else was present. Officer Bailey testified that the shop owner seemed nervous as he replied that no one else was present.

Nonetheless, Officer Bailey called for the person in the back to come out. Marr, who is an older, bearded, "biker looking" man, emerged. Officer Bailey testified that Marr also appeared nervous. Based on these circumstances, Officer Bailey performed a pat-down search of Marr. During this pat-down search, the officer felt "hitters" used to ingest drugs, and two small, plastic bags of methamphetamine. The officer also found a large amount of cash. Following the pat-down, the officers received verbal and written consent from Marr to search his residence. At the residence, they found weapons, additional methamphetamine, and a methamphetamine lab.

Following the suppression hearing, the trial court concluded that Officer Bailey lacked a reasonable and articulable suspicion that Marr was engaged in criminal activity to justify the pat-down search. The trial court further suppressed the evidence seized from Marr's residence, determining that the improper pat-down search vitiated Marr's consent to search the residence. The Court of Appeals affirmed the judgment.

When reviewing a trial court's judgment with respect to a suppression hearing, the court's findings of facts are conclusive if they are supported by substantial evidence. RCr 9.78. The trial court's legal conclusions are reviewed de novo. *Adcock v. Commonwealth*, 967

S.W.2d 6, 8 (Ky.1998). In this case, it should be noted that the evidence presented by the Commonwealth was uncontroverted, and therefore, we assume that these are the facts upon which the trial court based its judgment.

■■■ A police officer may, for his protection, conduct a pat-down search of a person when that officer has a reasonable and articulable suspicion that criminal activity is afoot. *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1885, 20 L.Ed.2d 889 (1968). In determining whether the requisite reasonable and articulable suspicion exists, the reviewing court must examine the totality of the circumstances to see whether the officer had a particularized and objective basis for the suspicion. While a "mere 'hunch' is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu,* 534 U.S. 266, 274, 122 S.Ct. 744, 751, 151 L.Ed.2d 740 (2002) (internal citations omitted).

Marr relies heavily on those cases involving anonymous tips, particularly the seminal case of *Florida v. J.L.,* 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). The Supreme Court in *J.L.* explained that "reasonable suspicion . . . requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." 529 U.S. at 272, 120 S.Ct. at 1379. Judged against this standard, the anonymous tip in *J.L.—* which stated simply that a male wearing a certain shirt at a bus station was carrying a gun—was insufficient to justify an investigatory stop.

■■■ When the circumstances in this case are examined in their totality, the present situation becomes readily distinguishable from *J.L.* Officers conducted surveillance of the body shop prior to Marr being frisked, and noticed a traffic pattern consistent with illegal drug activity. They arrested one visitor to the body shop and found illegal drugs. The police are permitted to take into account their surroundings—and whether a particular location has a reputation for being a "known drug" area—when forming a reasonable and articulable suspicion. *See Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) (legitimate *Terry* stop based on suspect's suspicious behavior coupled with his presence in notorious "crack house"). Likewise, Officer Bailey's suspicion of Marr was legitimately raised once it became objectively probable that drugs were being trafficked from the body shop.

■■■ In *J.L.* it was particularly noted that the defendant made "no threatening or otherwise unusual movements." 529 U.S. at 268, 120 S.Ct. at 1377. The nervous behavior of both Marr and the body shop owner raised the officer's suspicion in this case. "Although nervousness alone is insufficient to give rise to reasonable suspicion, it is an important factor in the analysis." *Adkins v. Commonwealth,* 96 S.W.3d 779, 788 (Ky.2003). It was also reasonable for the officer to conclude that the body shop owner had lied when he told him no one was present in the back room. *Cf. Adkins,* 96 S.W.3d at 787 (where fact that suspect gave a false name and address was legitimate factor in forming officer's suspicion).

■■■ Marr incorrectly argues that the anonymous tip formed the sole basis of Officer Bailey's suspicion. Rather, the anonymous tip in this case was suitably corroborated by the fact that the described "biker looking" man was present at the named body shop; that the traffic flow to and from the shop suggested drug activity;

that the owner of the shop appeared nervous upon the officers' lawful entrance; that the owner concealed Marr's presence in the back room; and that Marr himself appeared nervous. Officers are permitted to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them[.]" *Arvizu,* 534 U.S. at 273, 122 S.Ct. at 750–51. Whether the tip provided basis to believe criminal activity was afoot or not, the additional factors listed above clearly allowed the officer the reasonable basis to do a patdown search for his own safety at that point. The confluence of facts and the suspicion of drug activity in this building made the situation inherently dangerous. Accordingly, the officer was justified in conducting the minimally invasive patdown search of Marr. *See Baker v. Commonwealth,* 5 S.W.3d 142, 145 (Ky.1999) ("Whether a seizure is reasonable requires a review of the totality of the circumstances, taking into consideration the level of police intrusion into the private matters of citizens and balancing it against the justification for such action.").

Based upon the foregoing, the opinion of the Court of Appeals affirming the judgment of the Jefferson Circuit Court, is reversed.

All sitting. MINTON, NOBLE, SCOTT, JJ., concur. ABRAMSON, J., dissents by separate opinion in which LAMBERT, C.J. and SCHRODER, J., join.

Dissenting Opinion by Justice ABRAMSON.

I respectfully dissent because I believe that the trial court and the Court of Appeals properly found that Officer Bailey lacked reasonable and articulable suspicion that "criminal activity [was] afoot" and Marr posed a threat to the officers' safety.

*Terry v. Ohio,* 392 U.S. 1, 28–31, 88 S.Ct. 1868, 20 L.Ed.2d 889. 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, 911. 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The following portions of the Court of Appeals opinion reflect what I conclude is the proper analysis of this case:

The Fourth Amendment of the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court recognized an exception to the warrant requirement by sanctioning both investigatory stops and limited pat-down searches of suspects. When there is a reasonable suspicion that criminal activity is afoot, a police officer may briefly detain an individual on the street, even though there is no probable cause to arrest him. *Id.* at 30–31, 88 S.Ct. at 1884–85, 20 L.Ed.2d at 911.

*Terry* also held that "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," the officer may conduct a patdown search "to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." *Id.* at 24, 88 S.Ct. at 1881–82, 20 L.Ed.2d at 908. Frisking a suspect during a *Terry* stop is strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby. *Commonwealth v. Crowder,* Ky., 884 S.W.2d 649 (1994), *citing Terry, supra.* Furthermore, in *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), the United States Supreme Court cautioned that the narrow scope of the *Terry* ex-

ception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place. "Nothing in *Terry* can be understood to allow a generalized 'cursory search for weapons' or indeed, any search whatever for anything but weapons." *Id.* at 93–94, 100 S.Ct. at 343–44, 62 L.Ed.2d at 247.

The Fourth Amendment requires some minimum level of objective justification for the officer's actions measured in light of the totality of the circumstances. *See United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *Eldred v. Commonwealth,* Ky., 906 S.W.2d 694 (1994). When considering the totality of the circumstances, a reviewing court should take care not to view the factors upon which police officers rely to create reasonable suspicion in isolation. Rather, courts must consider all of the officer's observations, and give due weight to inferences and deductions drawn by trained law enforcement officers. *United States v. Arvizu,* 534 U.S. 266, 272–75, 122 S.Ct. 744, 151 L.Ed.2d 740, 749–51 (2002). *See also United States v. Martin,* 289 F.3d 392, 398 (6th Cir., 2002). The test for a *Terry* stop and frisk is not whether an officer can conclude that an individual is engaging in criminal activity, but rather whether the officer can articulate facts [giving rise to a reasonable suspicion] that criminal activity may be afoot and that the suspect may be armed and dangerous. *Commonwealth v. Banks,* Ky., 68 S.W.3d 347, 351 (2001) *citing Terry v. Ohio,* 392 U.S. at 30, 88 S.Ct. at 1884–85, 20 L.Ed.2d at 911.

The trial court compared the facts of the present case to those presented in *Florida v. J.L.,* 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). In that case, the police received information from an anonymous telephone caller that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun. Upon arriving at the bus stop, the police saw three black males " 'just hanging out [there]'." *Id.* at 268, 120 S.Ct. at 1377, 146 L.Ed.2d at 259. When the police frisked J.L., who was a juvenile and was wearing a plaid shirt, they discovered a handgun in his pocket. J.L. was charged with carrying a concealed firearm without a license and possessing a firearm while under the age of 18. Subsequently, the trial court granted J.L.'s motion to suppress the gun as the fruit of an unlawful search in violation of the Fourth Amendment, and the Florida Supreme Court affirmed the trial court.

In agreeing with the state court. the United States Supreme Court reaffirmed its decision in *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), and distinguished the situation in *J.L.* based on the facts. The Court relied in large part on the predictive aspects of the information, rather than a particular physical description of the suspect, as a major element in facilitating corroboration by the police and creating " 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.' " *Florida v. J.L.,* 529 U.S. at 270, 120 S.Ct. at 1378, 146 L.Ed.2d at 260 (*quoting Alabama v. White,* 496 U.S. at 327, 110 S.Ct. at 2414–15, 110 L.Ed.2d at 301). The Court stated:

> The tip in the instant case lacked the moderate indicia of reliability present in *White* and essential to the Court's decision in that case. The anonymous call concerning J.L. provided no predictive information and therefore left

the police without means to test the informant's knowledge or credibility. That the allegation about the gun turned out to be correct does not suggest that the officers, prior to the frisk, had a reasonable basis for suspecting J.L. of engaging in unlawful conduct: The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search. All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L. If *White* was a close case on the reliability of anonymous tips, this one surely falls on the other side of the line. *Id.,* 529 U.S. at 271, 120 S.Ct. at 1378, 146 L Ed.2d at 260–61.

The facts of the present case present a very close question regarding whether Officer Bailey had a reasonable and articulable suspicion to justify a pat-down search of Marr....

\*    \*    \*    \*    \*    \*

The trial court found that, as was the case in *Florida v. J.L,* there was no evidence concerning the source of the original tip or the reliability of the informant. The informant's tip merely advised the police that someone who matched Marr's description would be at the scene. The informant provided no predictive information about his conduct, nor did the police surveillance corroborate the tip that Marr was trafficking in methamphetamine.

Furthermore, there was no evidence that the body shop was located in a high-crime area. While the surveillance did raise a legitimate suspicion of drug activity at the body shop, none of the surveillance corroborated the information that Marr was involved in the trafficking. In addition, Officer Bailey admitted that the marijuana seized from one of the vehicles leaving the body shop was not connected to this investigation.

The events occurring inside the body shop were no more conclusive. Although the owner lied about Marr's presence in the building, his denial of Marr's presence in the building did not directly implicate Marr. Indeed, Marr made no attempt to hide from the officers. Furthermore, there was no evidence, even from the unidentified informant, that Marr possessed a weapon. Thus, all that remained was Marr's resemblance to the very general description given by the informant, his presence at the scene of suspected drug activity, and Officer Bailey's perception of Marr's nervousness.

We agree with the trial court that these circumstances were insufficient to justify the pat-down search of Marr. Marr's presence in an area of expected criminal activity, standing alone, was not a sufficient basis for an investigatory stop. *Simpson v. Commonwealth,* Ky. App., 834 S.W.2d 686 (1992); *Illinois v. Wardlow,* 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570, 576 (2000). And while an individual's nervousness or suspicious behavior can contribute to the establishment of an articulable suspicion, *Simpson,* 834 S.W.2d at 688, (footnote omitted) Marr's nervousness alone was not sufficient to create a reasonable inference that he was involved in criminal activity. Consequently, the trial court properly granted Marr's motion to suppress the evidence seized as a result of that search.

In any event, even if "reasonable and articulable suspicion" had existed, the majority opinion is not dispositive of Marr's

suppression motion. The case should be remanded for the trial court to address whether the items found on Marr are admissible under the "plain feel" doctrine. *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); *Commonwealth v. Whitmore,* 92 S.W.3d 76 (Ky.2002).

LAMBERT, C.J.; and SCHRODER, J., join.