**Roderick Fitzpatrick BROWN,**
**Appellant**

v.

**COMMONWEALTH of Kentucky,**
**Appellee.**

**No. 2012–CA–001944–MR.**

Court of Appeals of Kentucky.

Feb. 14, 2014.

Steven J. Buck, Frankfort, KY, for appellant.

Tami Allen Stetler, Frankfort, KY, for appellee.

Before ACREE, Chief Judge; MAZE and STUMBO, Judges.

## OPINION

MAZE, Judge:

Appellant, Roderick Fitzpatrick Brown, appeals his conviction and sentence for disorderly conduct, possession of drug paraphernalia, and possession of marijuana. Specifically, he contends that the trial court erred in denying his motion to sup-

press evidence which he claims police obtained through an illegal search of his residence. Because officers lacked the requisite suspicion of danger to justify a protective sweep of Brown's residence, the trial court indeed erred in denying his motion to suppress the seized evidence. Therefore, we reverse and remand the case to the trial court.

## Background

The facts of this case are not in dispute. On February 15, 2012, a victim notified Lexington Police that three men had assaulted her at gunpoint. She knew all three men, and she identified Brown as the person who had assaulted her with a handgun. She reported to the operator where Brown lived and that the three men had walked toward that location after the assault. She stated to the dispatch operator, "[t]hey had guns" and that she knew Brown's residence contained other firearms, including an AK–47 assault rifle. It took approximately eight minutes for officers to arrive at Brown's residence.

The first officer on the scene, Officer Raker, waited around the corner from the residence until additional officers arrived. Six or seven officers eventually arrived in response to the victim's report and, with guns drawn, officers established a perimeter around the home, using a public address system to order the occupants out of the home. Two females emerged from the home followed by three males. Officers immediately separated, patted down and questioned each occupant. The individuals reported that no one remained in the home. Nevertheless, Officer Raker, who had not spoken with any of the occupants, conducted a sweep of the home accompanied by two other officers. Officers found no one else inside the home; however, during their sweep of the home, officers observed a black handgun, an AK–47 assault rifle, marijuana cigarettes, a glass pipe, and a bong, all in plain view.

Police charged Brown with first-degree wanton endangerment, possession of drug paraphernalia, and possession of marijuana. Brown sought suppression of the items observed in, and seized from, the home. The trial court held a hearing on the suppression matter on May 29, 2012.

At the hearing, Officer Raker testified that, prior to entering the home, officers had no reason to believe anyone else was in the home. He stated that at the time of the sweep, officers on the scene who were questioning the occupants "would have known" that the three men who exited the home were those the victim had named. However, according to Officer Raker, he and the Sergeant who ordered the protective sweep did not question the occupants personally and did not know their names when the sweep was ordered.

Following Officer Raker's testimony and extensive argument from the parties, the trial court overruled the motion to suppress, finding that officers had conducted a legal protective sweep. The trial court, speaking from the bench, cited the fact that more people had come out of the home than the three police expected. From this the court concluded that it was reasonable for officers to believe there were more individuals inside the residence. Following entry by the trial court of a brief written order, Brown entered a conditional plea of guilty to the amended charge of disorderly conduct, as well as the original charges of possession of drug paraphernalia and possession of marijuana. The trial court accepted his plea and Brown now appeals pursuant to his conditional plea.

## Standard of Review

■ The sole issue in this case is whether the trial court erred in denying

Brown's motion to suppress the evidence observed and obtained during the officers' sweep of the then-unoccupied residence. Appellate review of a trial court's rulings on a motion to suppress is two-fold. *Brumley v. Commonwealth*, 413 S.W.3d 280, 283–84 (Ky.2013) (citing to *Commonwealth v. Marr*, 250 S.W.3d 624, 626 (Ky. 2008), and Kentucky Rules of Criminal Procedure ["RCr"] 9.78). First, the factual findings of the trial court are conclusive if supported by substantial evidence. *Id.* Second, if the findings are supported by substantial evidence, the appellate court conducts a *de novo* review to determine whether the trial court's ruling is correct as a matter of law. *Id.*

As we state *supra*, the facts in this case are not in dispute. Therefore, we elect to proceed directly to a *de novo* review of the trial court's legal conclusions and, ultimately, whether the protective sweep was justified.

## Analysis

### I. The Reasonableness of the Protective Sweep

At the heart of this case is the fundamental and closely held right to be free from unreasonable searches and seizures. Both the United States and Kentucky Constitutions guarantee this right. *See* U.S. Const. amend. IV; Ky. Const. § 10. Once again, we are confronted with the question of whether a search in this case was "unreasonable" or whether it fits within one of the recognized exceptions to the requirement of a search warrant. The United States Supreme Court announced one such exception, and the sole exception at issue in this case, in *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990).

### A. *Buie* and Relevant Progeny

In *Buie*, the Supreme Court extended the officers' safety motivation behind *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to the in-home arrest context, permitting a protective sweep of the home under certain circumstances. In doing so, the Court addressed "the immediate interest of police officers in taking steps to assure themselves ... that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack." *Buie*, 494 U.S. at 333, 110 S.Ct. at 1097–1098. The Court acknowledged, "[a]n in-home arrest puts the officer at the disadvantage of being on his adversary's 'turf.' An ambush in a confined setting of unknown configuration is more to be feared than it is in open, more familiar surroundings." *Id.*

With this in mind, the Court created two types of protective sweeps authorities may execute. Under the first category, "as an incident to the arrest[,] the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be launched." *Buie*, 494 U.S at 334, 110 S.Ct. at 1098. Under the second category of protective sweep, officers could conduct a more pervasive search, extending beyond the area immediately adjoining the place of arrest; however, like in *Terry* and unlike the first category, officers must first posses "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger[.]" *Id.*

Kentucky only recently adopted the exception announced in *Buie. See Guzman v. Commonwealth*, 375 S.W.3d 805, 807 (Ky.

2012) (noting this Court's prior recognition of the protective sweep exception to the warrant requirement in *Commonwealth v. Elliott,* 714 S.W.2d 494, 496 (Ky.App. 1986)). In *Guzman,* the Supreme Court held that the protective sweep exception did not apply, and the defendant's constitutional rights were violated, when officers conducted a protective sweep in parts of the home not immediately adjoining the room in which the suspects then stood. *Guzman,* 375 S.W.3d at 808. Though the Supreme Court took the opportunity to adopt *Buie*'s protective sweep exception, *Guzman* dealt largely with the distinguishable issue of consent, not with the proper scope of a protective sweep under *Buie.* The facts of the case simply did not permit the Court to address the latter question at any great length. In fact, the Court was not confronted with a case concerning the second category of *Buie* protective sweeps until *Brumley v. Commonwealth,* 413 S.W.3d 280 (Ky.2013).[1]

In *Brumley,* officers faced a rural, unlit trailer which contained a suspect for whose arrest they had a warrant. After arresting the defendant and while walking away from the front door of the trailer, officers heard a rustling noise coming from inside. Officers immediately conducted a protective sweep of the trailer, finding only the defendant's dog and evidence of methamphetamine production in plain view. These facts, the Supreme Court concluded, formed insufficient justification for a protective sweep under *Buie*'s second category.

In *United States v. Colbert,* 76 F.3d 773 (6th Cir.1996), the Sixth Circuit Court of Appeals also addressed the second category of *Buie* protective sweeps. *Colbert* in-volved the arrest of a suspect in the parking lot of his apartment building some forty to fifty feet from the front door to his apartment. After police subdued a second, "very agitated, screaming and yelling" individual who also emerged from the apartment, officers announced their presence at the front door and, though they received no answer, proceeded inside to conduct a protective sweep. *Colbert,* 76 F.3d at 775. Police cited only their concern "that somebody might ... still be in there" as justification for the sweep. *Id.* Despite the officers' general safety concerns, on these facts and considering where the arrest occurred in relation to the swept area, the Court found the protective sweep of Colbert's apartment to be unconstitutional.

In *Wilson v. Morgan,* 477 F.3d 326 (6th Cir.2007), a defendant sued for violation of her federal constitutional rights following her arrest, along with that of two other suspects, just outside of her home. While the three detained suspects sat on the lawn of the home, officers observed a light inside the home turn on and then off. Based on this observation, officers conducted a protective sweep of the home. In finding the protective sweep to have been justified, the Court contrasted these facts with those in *Colbert,* emphasizing that, unlike in *Colbert,* officers "had reason to believe that ... there was at least one other person in the home based on the [observation] that a light had been turned on and off...." 477 F.3d at 339. This, the Court said, provided "the articulable suspicion that a person possibly posing a danger still lurked in the ... residence." *Id.*

Armed with this authority, we now consider the validity of the officers' protective sweep of Brown's residence.

---

1. We are aware that this case had not been published at the time the trial court made its decision concerning suppression, nor had it when the parties in this case submitted briefs to this Court. Nevertheless, we would be remiss if we did not discuss and apply this authority, if appropriate.

### B. Circumstances Surrounding the Sweep of Brown's Home

■ Brown contends that officers were not entitled to sweep his home because such a sweep was not "incident to an in-home arrest." *Buie, supra,* 494 U.S. at 327, 110 S.Ct. at 1094. We dispense with this argument easily by pointing out that "an arrest taking place just outside a home may pose an equally serious threat to the arresting officers." *Colbert, supra,* at 776. Therefore, the arrest of a defendant outside, rather than inside, the home does not preclude application of the *Buie* exception; it merely constitutes a factor to be considered when determining "whether the officers ha[d] a reasonable articulable suspicion that a protective sweep [was] necessary by reason of a safety threat." *Id.* at 776–77 (citing to *United States v. Henry,* 48 F.3d 1282 (D.C.Cir.1995)); *see also Wilson, supra,* at 338.

■ The Sixth Circuit has also held that circumstances other than those in which a defendant has already been arrested "can give rise to equally reasonable suspicion of equally serious risk of danger...." *United States v. Gould,* 364 F.3d 578, 584 (5th Cir.2004). For this reason, Brown's argument that because he had yet to be formally arrested, the *Buie* exception could not apply is unpersuasive. We proceed past these threshold challenges and into the heart of the issue; that is, what officers knew or had been told prior to their entry into Brown's home and whether those facts gave rise to a constitutionally sufficient level of suspicion under *Buie* and its progeny.

■ As we begin our analysis, it is important to remember that we must consider the *totality* of the circumstances and whether the facts, taken together, might have caused a reasonable officer to have an articulable suspicion of danger. *See Sam-son v. California,* 547 U.S. 843, 848, 126 S.Ct. 2193, 2197, 165 L.Ed.2d 250 (2006); *Commonwealth v. Marr,* 250 S.W.3d 624, 627 (Ky.2008); *United States v. Taylor,* 248 F.3d 506, 514 (6th Cir.2001); *United States v. Atchley,* 474 F.3d 840, 850 (6th Cir.2007) (citing to *United States v. Plavcak,* 411 F.3d 655, 661 (6th Cir.2005)). We must be careful not to look "at a few of the circumstances one-by-one and arrive at the invalid conclusion that because none of the circumstances alone would justify a sweep they are also insufficient collectively." *Brumley, supra,* at 290 (Abramson, J., dissenting) (citing to *United States v. Rodriguez,* 601 F.3d 402 (5th Cir.2010)); *see also Baltimore v. Commonwealth,* 119 S.W.3d 532, 539 (Ky.App.2003) (holding that we must not "view the factors relied upon by the police officer[s] ... in isolation."). With this key consideration in mind, we look to "all of the information available to law enforcement officials at the time" of the sweep of Brown's home. *Feathers v. Aey,* 319 F.3d 843, 849 (6th Cir.2003).

■ Before entering the home, Officer Raker was told of the following: 1) that three men assaulted the victim and walked toward Brown's residence; 2) that a black handgun had been used to assault the victim and that an AK–47 assault rifle was inside Brown's residence; and 3) that no one remained inside the home. In addition, Officer Raker knew it to be true that three men had exited the home along with two women. Finally, at the time of the protective sweep, Officer Raker was unaware of: 1) the identities of the three men who had exited the home, though his fellow officers would have had this information; 2) any sight or sound indicating the presence of another person inside the home; and 3) any other information indicating the same. Officer Raker cited his general concern for officers' safety as the sole reason for the sweep. Unfortunately,

considering all of these facts, this reasoning is constitutionally insufficient.

■ The *Buie* exception, to be applicable, "requires more than ignorance or a constant assumption that [someone else] is present in a residence." *United States v. Archibald,* 589 F.3d 289, 300 (6th Cir. 2009). Rather, one must possess "articulable facts." *Buie, supra.* In the simplest terms, " '[n]o information' cannot be an articulable basis for a sweep that requires information to justify it in the first place." *Archibald* at 300.

Like in *Colbert,* and unlike in *Wilson,* officers outside of Brown's residence had no articulable information, as it has been defined in those cases, which led them to reasonably believe someone remained inside the home. They saw no sight and heard no sound which spurred them to enter the home. Officer Raker testified to this fact when he agreed that officers "had no reason to believe anyone else was inside the home." The Commonwealth, like the trial court, makes much of the fact that more people exited the home than the three police were seeking. However, when properly considered among the other evidence, including that they had no reason to believe more than five people had been inside the home and that they had already secured three male suspects, this cannot constitute an articulable suspicion that another dangerous individual remained inside; certainly not in the way the light in *Wilson* did. Rather, from this headcount stems only the same amount of uncertainty and general concern "that someone might ... still be in there" that our courts have repeatedly rendered insufficient to justify a protective sweep. *Colbert, supra,* at 775.

■ Indeed, officers had also been told there were guns in the home; yet, the impact of this conclusive fact on our analysis is diminished, if not eliminated, by the fact that officers admittedly possessed no reason to believe anyone remained inside the home to use those weapons against them. In other words, the suspected presence of persons, not merely of firearms, is the essential and overriding element behind the protective sweep exception; and that element is lacking in this case.

In conclusion, officers possessed only the "lack of knowledge" spoken of in *Colbert* and they acted only upon the "constant assumption" spoken of in *Archibald.* This is not enough to justify the sweep of Brown's residence. Though the trial court's factual findings were supported, and therefore conclusive, we nonetheless find that its application of the law regarding *Buie*'s second category of protective sweep, as established by the authority cited above, was erroneous and requires reversal.

**C. Burden of Proof at the Suppression Hearing**

Although Brown does not emphasize this issue on appeal, we are compelled to note that, at the suppression hearing, the trial court disagreed with Brown's counsel regarding who bore the burden of proof. The trial court ultimately stated "I don't think it really matters. I think the burden is on [Brown]." This statement was as incorrect as it was crucial to the proceedings.

■ It is elementary that the Commonwealth bears the burden of justifying a warrantless search by establishing that an exception to the warrant requirement exists. *See Welsh v. Wisconsin,* 466 U.S. 740, 751, 104 S.Ct. 2091, 2098, 80 L.Ed.2d 732 (1984); *Kerr v. Commonwealth,* 400 S.W.3d 250, 265 (Ky.2013) (citing to *King v. Commonwealth,* 386 S.W.3d 119, 122 (Ky.2012)); *Commonwealth v. McManus,* 107 S.W.3d 175, 177 (Ky.2003); *Commonwealth v. Neal,* 84 S.W.3d 920, 923 (Ky.

App.2002). While this issue was not briefed at length, and while we believe the constitutional issue alone warrants reversal, the trial court's obvious error cements our conviction that it erred in denying Brown's motion to suppress.

### Conclusion

This Court, once again and quite rightly, recognizes that officers often face dangerous conditions, difficult decisions, and scarcely a second's time to negotiate both. For this reason, our Commonwealth acknowledges that even the sacred right to be left alone must occasionally yield to the protection of law enforcement officers. However, in this case, on these facts, the law requires us to find that, for want of an articulable suspicion of danger, the entry into Brown's residence was constitutionally impermissible. Therefore, the order of the Fayette Circuit Court is reversed and remanded for further proceedings consistent with this opinion.

ALL CONCUR.