RENDERED: NOVEMBER 4, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1116-MR

COMMONWEALTH OF KENTUCKY                APPELLANT

v.           APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE JULIE M. GOODMAN, JUDGE
ACTION NO. 21-CR-00324-004

ABDUL A. TYREE                     APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; CALDWELL AND K. THOMPSON, JUDGES.

CALDWELL, JUDGE: The Commonwealth appeals from the Fayette Circuit Court's order granting Abdul A. Tyree's motion to suppress evidence. For the following reasons, we reverse and remand this matter to the Fayette Circuit Court for proceedings consistent with this Opinion.

# FACTS

On January 14, 2021, Lexington Police Department officers, assisting the United States Marshal Service Fugitive Task Force, arrived at 411 Roosevelt Boulevard in Lexington to execute a warrant for the arrest of Raekwon Burse. A warrant had been issued for Burse, who was a suspect in a 2020 murder which had occurred in Lexington. And though it was thought he had fled to Detroit after the crime, he had recently been observed by law enforcement at the Roosevelt Boulevard address.

As Lexington Police Detective ("Det.") Reid Bowles approached the small, one-story bungalow on Roosevelt Boulevard in his unmarked vehicle, he activated lights and sirens. He saw an unknown person run inside the home via the front door. Det. Bowles left his cruiser and situated himself at the rear of the home, to prevent an escape through the back doors or windows. He was joined by Deputy United States Marshal Todd Hansford, who had ridden with him, and other members of the Task Force who converged on the rear of the home from different locations. Other law enforcement officers were contemporaneously occupying the sides and front of the small home. As Det. Bowles came around the rear of the home, he noticed a blanket, which was covering an open rear window, be moved aside by someone inside the home. Raekwon Burse began to exit the home via the

window, but stopped when he saw Det. Bowles, who addressed him by name. Burse cursed and retreated into the home.

Det. Bowles approached the window and removed the blanket. He then observed a handgun on a bed inside. He radioed this information to other members of the Task Force. Other members of the Task Force were reporting via their radios that other persons were attempting to flee the home through windows located on the side of the house but were retreating back inside as they saw officers posted outside.

Concurrently, Deputy United States Marshal Gordon Hotchkiss[1] was at the front of the home with other deputies and Lexington Police Department officers. Hotchkiss knocked on the door and someone inside opened the door. He took several steps just inside the home when he was directed to the location of Burse by the individual who had opened the door. He handcuffed Burse and immediately removed him from the home. Hotchkiss testified that a very short time elapsed, perhaps a couple of minutes, between his knocking on the front door and the deputies removing Burse in handcuffs from the residence. After the deputies had removed Burse from the front of the home, Lexington Police

---

[1] The trial court, the Appellant, and the Appellee all incorrectly refer to the Deputy as Gordon "Hoskins," but a careful review of the record indicates that the Marshal's surname is "Hotchkiss."

-3-

Department officers entered to conduct a "protective sweep," as multiple people had been seen attempting to flee the home and a handgun had also been observed.

Contemporaneous with the arrest of Burse, Det. Bowles, still at the rear of the home, observed the Appellant, Abdul A. Tyree, attempt to flee out the rear door of the home as officers began the sweep of the home. Observing Det. Bowles, Tyree retreated inside the home, where he was detained in the kitchen by officers conducting the sweep. It was later determined that Tyree had a warrant for his arrest from Ohio.

During the protective sweep of the home, officers noted, in plain view, evidence of trafficking in narcotics; the officers saw marijuana "shake" and a white powder on the kitchen counter. Based upon these observations, a search warrant was obtained for the home and several vehicles found about the property. When the search warrant was executed, thousands of dollars in cash, four handguns, and large amounts of heroin, cocaine, marijuana, and fentanyl were found and seized. All four men found in the home, including the Appellant, were charged with trafficking and firearms violations.

Tyree alone filed a motion to suppress the evidence discovered during the protective sweep, arguing that his seizure was illegal and, therefore, the evidence found as a result of that seizure was illegally obtained. Following a hearing, the trial court upheld Tyree's motion, holding that once Burse was

arrested and removed from the home a protective sweep was unnecessary and therefore not justified. The Commonwealth has appealed that holding. We agree with the Commonwealth and reverse the trial court's order and remand this matter back to the trial court.

## STANDARD OF REVIEW

When reviewing a trial court's determination on suppression of evidence, the standard of review is two-fold. We first give deference to the trial court's finding of facts, reviewing to ensure they are supported by substantial evidence. We review the legal determinations of the trial court *de novo.*

> First, we review the trial court's factual findings for clear error and we are to "deem conclusive the trial court's factual findings if supported by substantial evidence." *Williams v. Commonwealth*, 364 S.W.3d 65, 68 (Ky. 2011). Next, we review *de novo* the trial court's application of the law to those facts. *Id.* Further, the ability to assess the credibility of witnesses and to draw reasonable inferences from the testimony at a suppression hearing "is vested in the discretion of the trial court." *Pitcock v. Commonwealth*, 295 S.W.3d 130, 132 (Ky. App. 2009) (*citing Commonwealth v. Whitmore*, 92 S.W.3d 76, 79 (Ky. 2002)).

*Burdine v. Commonwealth*, 641 S.W.3d 708, 710 (Ky. App. 2022).

The facts are not in dispute.[2] We will conduct a *de novo* review of the trial court's application of the law to those facts.

---

[2] We note that the trial court expressed some misapprehensions of the facts at the suppression hearing during arguments after the testimony of the law enforcement officers. However, as the

# ANALYSIS

This matter presents a unique factual situation. Most usually, an accused seeking an order to suppress evidence against him alleges that he has a privacy interest in the area which was searched by law enforcement. And therefore, law enforcement was not legally entitled to vitiate that privacy interest as there was no factual predicate to allow the breach, such as a proper arrest or the execution of a validly obtained search warrant. This case does not present such a factual scenario.

Rather, here, Tyree could forward no privacy interest in the home, nor did he attempt to do so. He was not a resident of the home and did not claim to be even an overnight guest. He does not claim ownership of the drugs and guns seized. His motion, instead, simply claimed that he was illegally seized.[3]

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The Fourth Amendment does not bar all warrantless searches but only unreasonable ones. *Maryland v. Buie*, 494 U.S. 325, 331, 110 S. Ct. 1093, 108 L. Ed. 2d 276 (1990). To determine reasonableness, we "balance[ ] the intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Ibid*. (collecting cases).

court did not repeat these erroneous factual findings in the written order, we accept the factual findings in the order to be supported by substantial evidence.

[3] The motion, in relevant part, requests that the court "suppress all evidence and/or information seized during the unlawful seizure of Tyree."

*United States v. Cousins*, 841 F. App'x 885, 898 (6th Cir. 2021), *cert. denied sub*

*nom. Stewart v. United States*, 142 S. Ct. 284, 211 L. Ed. 2d 132 (2021).

It is axiomatic that to assert a violation of one's Fourth Amendment

rights, one must forward an interest in the subject property which the Fourth

Amendment was meant to protect. As pointed out recently by the Kentucky

Supreme Court in *Warick v. Commonwealth*, this is not so much a matter of

"standing" to object to the actions of law enforcement, but instead is more a matter

of whether a person has an interest protected by the Fourth Amendment in the

place searched or the items seized:

> The continued use of "standing" to describe the
> right to invoke the Fourth Amendment exclusionary rule
> is not an anomaly confined to Kentucky. For example,
> *Byrd v. United States*, recently described the "standing"
> question as a common one.

> It is worth noting that most courts analyzing
> the question presented in this case, including the
> Court of Appeals here, have described it as one of
> Fourth Amendment "standing," a concept the
> Court has explained is not distinct from the merits
> and "is more properly subsumed under substantive
> Fourth Amendment doctrine."

> ___ U.S. ___, 138 S. Ct. 1518, 1530, 200 L. Ed. 2d 805
> (2018) (citation omitted).

> *Byrd* also recognized one reason why the Fourth
> Amendment "standing" terminology remains in use,
> cautioned against its confusion with the U.S.

Constitution's Article III standing, and provided explicit guidance in addressing a motion to suppress. *Byrd* states:

> The concept of standing in Fourth Amendment cases can be a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search; but it should not be confused with Article III standing, which is jurisdictional and must be assessed before reaching the merits. Because Fourth Amendment standing is subsumed under substantive Fourth Amendment doctrine, it is not a jurisdictional question and hence need not be addressed before addressing other aspects of the merits of a Fourth Amendment claim.

> *Id.* at 1530-31 (internal citations and parenthetical omitted). Consequently, we again recognize the Supreme Court's guidance, and we do not address Warick's "standing" in this appeal, but look to the merits of his Fourth Amendment claim.

*Warick v. Commonwealth*, 592 S.W.3d 276, 282-83 (Ky. 2019).

There was no evidence adduced that Tyree was a resident of 411 Roosevelt Avenue.[4] There was not even any evidence presented that Tyree was at the home with the consent of the resident, though there is also no suggestion he was not. Heeding the Supreme Court's directing in *Warick*, we are not holding that Tyree had no standing to contest the seizure of items in the home but are

---

[4] The lease was in the name of an Anthony Beaty, who was not indicted along with those found at the home on January 14, 2021.

-8-

instead finding that his Fourth Amendment claim lacks sufficient merit. Quite simply, we hold that Tyree had no "cognizable Fourth Amendment interest in the place searched" and thus had no claim to seek "relief for an unconstitutional search[.]" *Byrd*, 138 S. Ct. at 1530.

The Fourth Amendment protects "people, not places," and, therefore, the person forwarding the protection against intrusion must prove satisfactorily that he has a legitimate expectation of privacy in the area searched or the property seized. *See Rakas v. Illinois*, 439 U.S. 128, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978).[5] Evaluating claims of an expectation of privacy involves the application of a two-part test. The first part involves an analysis of whether the individual, by his conduct, has "exhibited an actual (subjective) expectation of privacy." If he has, then the analysis turns to the second question, whether the expectation of privacy is

_____

[5]    A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. [*Alderman v. United States*, 394 U.S. 165, 174, 89 S. Ct. 961, 966, 22 L. Ed. 2d 176 (1969).] And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, *United States v. Calandra*, 414 U.S. 338, 347, 94 S. Ct. 613, 619, 38 L. Ed. 2d 561 (1974), it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections.

*Rakas*, 439 U.S. at 134, 99 S. Ct. at 425.

one which society belies is reasonable under the circumstances. *See Smith v.*

*Maryland*, 442 U.S. 735, 740, 99 S. Ct. 2577, 2580, 61 L. Ed. 2d 220 (1979).[6]

> The first is whether the individual, by his conduct, has "exhibited an actual (subjective) expectation of privacy," 389 U.S., at 361, 88 S. Ct., at 516 – whether, in the words of the *Katz* majority, the individual has shown that "he seeks to preserve [something] as private." *Id.*, at 351, 88 S. Ct., at 511. The second question is whether the individual's subjective expectation of privacy is "one that society is prepared to recognize as 'reasonable[.]'

*Smith*, 442 U.S. at 740, 99 S. Ct. at 2580.

Tyree never forwarded any argument which would form a basis for a finding that he had an actual expectation of privacy in the home. In *Ordway v. Commonwealth*, the Kentucky Supreme Court determined Ordway had no expectation of privacy sufficient to contest the search of his girlfriend's apartment, wherein was found evidence tying both to a series of robberies and burglaries. 352 S.W.3d 584, 592 (Ky. 2011). In so finding, the Court noted "[n]o evidence was presented at either suppression hearing that Appellant legally resided with [the lessee], enjoyed unrestricted access to the apartment, had a key to the apartment, or paid bills there." *Id.* In the present case, Tyree made no argument that he had any connection whatsoever to the Roosevelt Boulevard home.

---

[6] At the suppression hearing, the trial court stated on several occasions that she interpreted the cases she was reading to support a contention that anyone against whom contraband is being used has a right to challenge the seizure of that contraband. However, no such contention appears in the order promulgated.

-10-

> A defendant bears the burden of establishing standing to challenge a Fourth Amendment search. *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1510 (6th Cir. 1988). That burden requires proof that the defendant had a legitimate expectation of privacy in the premises. *Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980).

*Id.*[7]

Seemingly recognizing the tenuous nature of his claim, Tyree argued to the trial court that his seizure was illegal, and that the fruits of that seizure must be suppressed. This argument begs the question, though: were the cash, drugs and guns seized fruits of his seizure? We hold that they were not. They were, instead, found as a direct result of a protective sweep of the home.

The Commonwealth below, and on appeal, forwards that the police were properly engaged in a protective sweep of the home during the arrest of Burse. This protective sweep placed the police in a position to observe instrumentalities of criminal activity in the home and they obtained a search warrant based upon those observations.

It is the Commonwealth which bears the burden of proving that an exception to the usual requirement that the police have a warrant before invading the home of a citizen.

---

[7] This passage is indicative of the aforementioned confusion that has surrounded the jurisprudence revolving around the concept of a right to raise a Fourth Amendment claim. As we pointed out earlier, and as the trial court noted in its order, it is not truly a matter of standing, but a matter of whether one has a reasonable expectation of privacy. *Byrd*, 138 S. Ct. at 1530.

-11-

It is elementary that the Commonwealth bears the burden of justifying a warrantless search by establishing that an exception to the warrant requirement exists. *See Welsh v. Wisconsin*, 466 U.S. 740, 751, 104 S. Ct. 2091, 2098, 80 L. Ed. 2d 732 (1984); *Kerr v. Commonwealth*, 400 S.W.3d 250, 265 (Ky. 2013) (citing to *King v. Commonwealth*, 386 S.W.3d 119, 122 (Ky. 2012)); *Commonwealth v. McManus*, 107 S.W.3d 175, 177 (Ky. 2003); *Commonwealth v. Neal*, 84 S.W.3d 920, 923 (Ky. App. 2002).

*Brown v. Commonwealth*, 423 S.W.3d 765, 771-72 (Ky. App. 2014).

As the trial court found, the Commonwealth provided evidence that Det. Bowles observed Burse move aside the blanket covering the open rear window and attempt to leave the home through the window as officers were at the front of the home. When Burse saw Det. Bowles, he uttered an expletive and retreated into the home. Burse was, it must be remembered, the subject of the arrest warrant. Det. Bowles removed the blanket so that he could see inside the home and ensure his safety. A known, wanted felon, who was alleged to have committed a murder using a firearm, had just appeared in the window, and then disappeared from view back into the home and was attempting to elude capture. When Det. Bowles removed the blanket, he saw a handgun on the bed.

Contemporaneously, the evidence indicated others in the home, not the subject of the arrest warrant, were attempting to flee the home through windows and the rear door, including Tyree through the rear door. Det. Bowles radioed that he had observed the handgun. Other officers were shouting and

-12-

relaying information over the radios that other persons were in the home and attempting to flee and then were retreating into the home – a home in which there was known to be at least one handgun. To ensure the safety of law enforcement personnel present, including those who had secured Burse and were removing him from the home and leading him away from the home, the officers engaged in a "protective sweep."

The protective sweep doctrine was first articulated by the United States Supreme Court in *Maryland v. Buie*, 494 U.S. 325, 327, 110 S. Ct. 1093, 1094, 108 L. Ed. 2d 276 (1990). "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Id*. The *Buie* Court actually differentiated between two types of acceptable protective sweeps. The Kentucky Supreme Court characterized the two types of sweeps in *Kerr v. Commonwealth*.

> The first type of protective sweep incident to an arrest allows officers, "as a precautionary matter and without probable cause or reasonable suspicion, [to] look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched."
>
> The second type of protective sweep incident to an arrest allows officers to undertake a broader search of places not adjacent to the place of arrest if there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably

-13-

prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene."

*Kerr v. Commonwealth*, 400 S.W.3d 250, 266 (Ky. 2013) (citations omitted).

The type of sweep claimed by the Commonwealth in the present case would have to fall into the second, broader category as the officers searched not just the area immediate to the front of the home where Burse was arrested. Thus, the question presented is whether the Commonwealth presented articulable facts which would warrant a reasonable officer in believing that the area searched could have allowed for a person posing danger to the officers to hide. We find, unlike the trial court, that the Commonwealth provided more than sufficient justification to conduct the protective sweep.

In reviewing the facts to determine if there was a sufficient showing that a reasonable officer might believe that a dangerous person might be present in the home sufficient to support a sweep, we look to the totality of the circumstances.

> As we begin our analysis, it is important to remember that we must consider the *totality* of the circumstances and whether the facts, taken together, might have caused a reasonable officer to have an articulable suspicion of danger. *See Samson v. California*, 547 U.S. 843, 848, 126 S. Ct. 2193, 2197, 165 L. Ed. 2d 250 (2006); *Commonwealth v. Marr*, 250 S.W.3d 624, 627 (Ky. 2008); *United States v. Taylor*, 248 F.3d 506, 514 (6th Cir. 2001); *United States v. Atchley*, 474 F.3d 840, 850 (6th Cir. 2007) (citing to *United States v. Plavcak*, 411

-14-

F.3d 655, 661 (6th Cir. 2005)). We must be careful not to look "at a few of the circumstances one-by-one and arrive at the invalid conclusion that because none of the circumstances alone would justify a sweep they are also insufficient collectively." *Brumley*, *supra*, at 290 (Abramson, J., dissenting) (citing to *United States v. Rodriguez*, 601 F.3d 402 (5th Cir. 2010)); *see also Baltimore v. Commonwealth*, 119 S.W.3d 532, 539 (Ky. App. 2003) (holding that we must not "view the factors relied upon by the police officer[s] . . . in isolation."). With this key consideration in mind, we look to "all of the information available to law enforcement officials at the time" of the sweep of Brown's home. *Feathers v. Aey*, 319 F.3d 843, 849 (6th Cir. 2003).

*Brown*, 423 S.W.3d at 770.

The officers and deputy Marshal who testified at the suppression hearing established that they were serving an arrest warrant on Burse, who was accused of killing a man by shooting him with a handgun. The accused in that murder, Burse, had been seen entering the Roosevelt Boulevard home that day by law enforcement conducting surveillance of the home. When the officers and deputies announced their presence, several things occurred from which we find reasonable officers would conclude that a dangerous person could be harbored within the home. First, a handgun was observed by Det. Bowles once he removed the blanket covering the open window after Burse attempted to flee through the window and then retreated. Then, several other people were observed attempting to flee the home, establishing that more than just Burse was present in the home. A reasonable officer could have believed that any of those persons could have

posed a danger to the officers until they were detained, given the presence of a handgun in the home. *See Cousins*, 841 F. App'x at 898:

> Here, the task force at the Dartmouth house had a reasonable, articulable, particularized suspicion warranting a belief that the house would harbor someone dangerous to the officers. That Mr. Moore lived there and was wanted on gun and drug charges increased the likelihood that firearms would be inside, increasing the chance of danger. It also raised the reasonable suspicion that others might be inside if Mr. Moore were continuing his drug-trafficking activities.

In *Brumley v. Commonwealth*, the Kentucky Supreme Court held that the known presence of firearms at the home where an arrestee is found is insufficient alone to establish sufficient reasonable suspicion to justify a protective sweep. 413 S.W.3d 280, 286 (Ky. 2013). "Therefore, this knowledge [the presence of firearms] alone does not create 'reasonable suspicion' that the officers were in imminent peril." *Id*.

This Court likewise recognized that the suspected presence of firearms, alone, are insufficient to establish reasonable suspicion to justify a sweep in *Brown*, 423 S.W.3d at 771. In *Brown*, this Court determined that it was the "suspected" presence of persons which is essential in evaluating whether a reasonable officer would have justification to sweep for danger. "In other words, the suspected presence of persons, not merely of firearms, is the essential and overriding element behind the protective sweep exception; and that element is

-16-

lacking in this case." *Id*. at 771. In the present case, the officers had observed *both* a handgun and numerous other persons in the home, where the handgun was known to be.

Further, the police did not engage in an assumption that other persons were present in the home in this case. The officers *saw* multiple persons other than Burse at the home when they served the arrest warrant. These people retreated into the home where a handgun had been observed.

> In *Wilson v. Morgan*, 477 F.3d 326 (6th Cir. 2007), a defendant sued for violation of her federal constitutional rights following her arrest, along with that of two other suspects, just outside of her home. While the three detained suspects sat on the lawn of the home, officers observed a light inside the home turn on and then off. Based on this observation, officers conducted a protective sweep of the home. In finding the protective sweep to have been justified, the Court contrasted these facts with those in [*United States v. Colbert*, 76 F.3d 773 (6th Cir. 1996),] emphasizing that, unlike in *Colbert*, officers "had reason to believe that . . . there was at least one other person in the home based on the [observation] that a light had been turned on and off . . . ." 477 F.3d at 339. This, the Court said, provided "the articulable suspicion that a person possibly posing a danger still lurked in the . . . residence." *Id.*

*Brown*, 423 S.W.3d at 769.

Tyree suggests that once Burse was arrested and removed from the home, any right to conduct a protective sweep had concluded. And the trial court

declared that once Burse was removed from the home, law enforcement no longer was entitled to sweep. That is erroneous.

> A search that occurs only after the danger has passed does not act to protect officers, as it serves only to endanger officers who would not have previously been in danger. The *Buie* Court expressly addressed that by stating that in any event a protective sweep should last "no longer than it takes to complete the arrest and depart the premises."

Trial Court Order (citing *Buie*, 494 U.S. 325, 110 S. Ct. 1093).

We find the trial court read *Buie* much too narrowly. When the protective sweep was begun, it was just as Deputy Hotchkiss was leaving the residence with Burse in handcuffs; the arrest and departing from the residence had not ended. Also, so long as law enforcement is still on scene, they remain on the premises and subject to the danger of an armed person hiding in the home. Law enforcement has a right to protect against attacks by those remaining in a home from which an arrestee has been removed, regardless of how cooperative the arrestee might have been. The danger does not end once the arrestee is removed from the home, and neither does the right to sweep. As we pointed out in *Brown*, *supra*:

> "[T]he immediate interest of police officers in taking steps to assure themselves . . . that the house in which a suspect is being, *or has just been*, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack." *Buie*, 494 U.S. at 333, 110 S. Ct. at 1097-1098.

-18-

423 S.W.3d at 768 (emphasis added).

Further, "[t]he Sixth Circuit has also held that circumstances other than those in which a defendant has already been arrested 'can give rise to equally reasonable suspicion of equally serious risk of danger . . . .' *United States v. Gould*, 364 F.3d 578, 584 (5th Cir. 2004)." *Id.* at 770.

The dissent in *Brumley* addressed the question of whether officers are entitled to protect themselves from a reasonable perceived danger which could occur both before and after the arrest has been completed.

> The officers are entitled to take steps to ensure their safety both before and after the arrest. In determining whether a protective sweep was justified, a reviewing court considers the totality of the circumstances surrounding the officer's actions and asks whether in those circumstances a reasonable officer might have had the requisite articulable suspicion of danger.

*Brumley*, 413 S.W.3d at 290 (Abramson, J., dissenting) (citations omitted).

We believe that under the totality of circumstances, the officers were justified in entering the home on Roosevelt Boulevard to conduct a protective sweep. They were serving a murder warrant, and the victim had died from a gunshot. A handgun was observed in the home and that information was immediately radioed to the other officers. In a very short period of time, less than two minutes, officers approached the home, encountered multiple occupants, arrested Burse, and observed a handgun and evidence of drugs in the home. Based

upon those observations, a search warrant to thoroughly search the home was obtained. That search revealed a significant amount of cash and controlled substances, along with several other handguns. The suspicion that there might be other handguns in the home, and people who might be a danger, was reasonable under the totality of the circumstances.

At the suppression hearing, the trial court cited both *Steagald v. United States*, as well as *Payton v. New York*. In *Steagald*, law enforcement had an arrest warrant for a person they had traced to an address associated with a particular telephone number. 451 U.S. 204, 101 S. Ct. 1642, 68 L. Ed. 2d 38 (1981). There was no evidence that the subject of the warrant had ever even been seen at the residence; simply the phone number tied the suspect to the address. Upon attempting to serve the warrant, the police did not find the subject of the warrant at the address, but did find evidence of drug activity. What is most significant, however, is that in *Steagald*, the government failed to object to whether the party asserting an expectation of privacy in the residence had a reasonable expectation, but actively argued that Steagald was a resident at the home to bolster a connection to the contraband found therein. *Id.* at 216 ("[P]etitioner's interest in being free from an unreasonable search of his home.").

In the present case, not only did the government raise the question of whether Tyree had a reasonable expectation of privacy in the property such that he

could challenge the search, the facts are otherwise divergent.  In *Steagald*, the resident told officers no one was in the home besides her, as Steagald and an acquaintance had been standing on the front porch as officers arrived and were already detained.  The men did not attempt re-entry into the home.  No guns were observed.  This case is quite different, and that difference constitutes a reasonable belief that danger could be harbored such as to justify the sweep.

In *Payton v. New York*, also oft cited by the trial court, the police went to Payton's apartment on the strength of probable cause to arrest him for the murder of a gas station manager a few days prior.  445 U.S. 573, 576, 100 S. Ct. 1371, 1375, 63 L. Ed. 2d 639 (1980).  Arriving at the apartment, they noted lights and music emanating from the unit, but got no response to knocking on the door.  After using crowbars to breach the door, no one was found inside, but evidence in plain view was seized.  The court held that as the government had argued no exigency to justify the warrantless breach of the home, the government had not established sufficient reason for the invasion of the home.  "Absent exigent circumstances, that threshold [to the home] may not reasonably be crossed without a warrant."  *Id*. at 590, 100 S. Ct. at 1382.  Again, the trial court's reliance is misplaced.

There were specific facts in the present case which established a reasonable belief on the part of law enforcement that dangerous people may be hiding in the same home where at least one handgun was observed.

> In particular, prior intelligence that an arrestee possesses firearms clearly heightens officer safety concerns, *United States v. Davis*, 471 F.3d 938 (8th Cir. 2006), and unidentified shuffling noises at the scene is a textbook example of the sort of specific, articulable, suspicion-generating facts *Buie* requires. Maren J. Messing, The Protective Sweep Doctrine: Reaffirming A Limited Exception, 44 Colum. J.L. & Soc. Probs. 33, 50 (2010) ("'Specific facts,' on the other hand, relate to the case at issue, such as when the police have seen a person enter the home who is unaccounted for at the time of the first arrest, or when the police have heard a noise coming from a back room.").

*Brumley*, 413 S.W.3d at 290-91 (Abramson, J., dissenting).

## CONCLUSION

We hold the trial court erred in holding that Tyree's Fourth Amendment rights were violated when law enforcement performed a protective sweep of the Roosevelt Boulevard residence. Tyree had no reasonable expectation of privacy in the home as he was not a resident nor was it even established that he was an invited guest. Further, he did not forward any interest in the contraband seized such as to have a possessory right in the items. We reverse the trial court's order granting suppression and remand this matter back to the trial court for further proceedings consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:          BRIEF FOR APPELLEE:

Daniel Cameron                 Sarah D. Dailey
Attorney General of Kentucky   Shannon Dupree
                               Frankfort, Kentucky
Courtney Hightower
Assistant Attorney General
Frankfort, Kentucky